OSTRER, J.A.D.
*217 Each defendant in these five back-to-back appeals by the State was convicted of fourth-degree operating a motor vehicle during a *218 period of license suspension. N.J.S.A. 2C:40-26. The statute prescribes a sentence of a "fixed minimum" term of at least 180 days without parole eligibility. N.J.S.A. 2C:40-26(c). We must decide whether the trial court exceeded its authority by ordering that defendants serve such sentences intermittently, under N.J.S.A. 2C:43-2(b)(7). The State contends the intermittent sentences are illegal. It argues a minimum period of parole ineligibility precludes an intermittent sentence. Having reviewed the plain language of the two statutes and the pertinent case law, we disagree.
However, to satisfy the mandated term of days, a defendant must serve continuous twenty-four-hour periods to satisfy each *224 day of the 180-day mandated term. We therefore modify the sentences of Eric L. Lowers in A-5146-15 and Stephen E. Nolan in A-5147-15; remand for the trial court to reconsider the sentence of Courtney D. Swiderski in A-5160-15; and reverse the sentences of Rene M. Rodriguez in A-5077-15 and Elizabeth A. Colon in A-5078-15, who were sentenced only to nights, and remand those matters for resentencing.
I.
Four defendants pleaded guilty to violating N.J.S.A. 2C:40-26(b). Appearing before the same judge, they admitted they drove a motor vehicle while their licenses were suspended for a second or subsequent conviction of driving while under the influence (DUI), N.J.S.A. 39:4-50. A fifth defendant pleaded guilty to violating N.J.S.A. 2C:40-26(a). She admitted driving a motor vehicle while her license was suspended for DUI. It evidently was the second time she did so during that suspension.
The court initially sentenced three defendants-Rene Rodriguez, Eric Lowers and Courtney Swiderski-to serve their 180-day term in a treatment program or home detention.[1] However, *219 we reversed those sentences in light of State v. Harris, 439 N.J. Super. 150, 106 A.3d 1265 (App. Div. 2015) and State v. French, 437 N.J. Super. 333, 98 A.3d 603 (App. Div. 2014), and remanded for resentencing. State v. Rodriguez, No. A-2541-14 (App. Div. July 29, 2015) (ESOA calendar); State v. Lowers, No. A-4260-13 (App. Div. June 22, 2015) (ESOA calendar); State v. Swiderski, No. A-2496-14 (App. Div. July 29, 2015) (ESOA calendar).
Ultimately, each defendant pleaded guilty based on the court's promise of a sentence that would allow each defendant to serve 180 days intermittently, over the State's objection. Three defendants-Stephen Nolan, Eric Lowers and Courtney Swiderski-specifically reserved the right to withdraw their guilty pleas if their intermittent sentences were invalidated.
Rene Rodriguez pleaded guilty to two separate indictments charging violations of N.J.S.A. 2C:40-26(b). The first charged a violation on July 11, 2012, in Pennsauken; the second on November 16, 2013, in Cherry Hill.[2] They were the second and third times he was caught driving while his license was suspended. Rodriguez had three DUI convictions, the last in 2010.
Rodriguez was fifty-five years old when sentenced. The court found that his lack of a prior criminal record and his amenability to probation outweighed the risk of his reoffending and the need to deter. See N.J.S.A. 2C:44-1(b)(7), (10) (mitigating factors); N.J.S.A. 2C:44-1(a)(3), (9) (aggravating factors). The court sentenced Rodriguez to two concurrent terms of two years of probation, conditioned on service of concurrent 180-day parole-ineligible terms of imprisonment, to be served "at night[ ] on ... Monday, Tuesday, Wednesday and Thursday of each week." The court found that the sentence would accommodate his work schedule and promote his success on probation. Rodriguez reportedly had *220 worked for a computer service firm for sixteen years. The court did not specify when Rodriguez was required to report to *225 the jail each night, or when he would be released each morning. However, he evidently would not be required to serve any continuous twenty-four-hour period in custody. Also, the court did not specify how each nightly stint would count toward the 180-day minimum.
In Elizabeth Colon's plea allocution, she admitted that she had been previously convicted of DUI.[3] Like Rodriguez, Colon was sentenced to two years of probation, conditioned upon service of the 180-day jail term "at night on Monday, Tuesday, Wednesday and Thursday of each week." Colon had worked at a frozen dessert shop for eleven years. She was a manager, but still earned a very modest income. She was twenty-eight years old at sentencing. She had three prior municipal court convictions for loitering, disorderly conduct and breach of the peace, the last in 2013. The court found the likelihood she would respond affirmatively to probationary treatment outweighed the slight risk she would reoffend, and the need to deter. See N.J.S.A. 2C:44-1(b)(10) (mitigating factor); N.J.S.A. 2C:44-1(a)(3), (9) (aggravating factors). As in Rodriguez's sentencing, the court did not expressly address how each nightly stint would count toward the 180-day minimum.
Eric Lowers had three prior DUI convictions.[4] The last was in 2005. According to his presentence report, he had one municipal *221 court conviction from 1997 that resulted in a fine (although the court stated he had three municipal court convictions). Forty-six years old at sentencing, Lowers lived with his wife and one child. He paid child support for another. Two adult children lived outside the home. Employed for sixteen years as a heavy equipment operator through a local union, he currently worked at a Philadelphia refinery. He was his household's principal breadwinner. He also assisted his ailing grandmother during the week.
The court sentenced Lowers to serve his 180-day term from Friday evening until Sunday evening of each week. No probation was imposed. The court found that his lack of a prior criminal history or his law-abiding behavior for a substantial period of time, and his character and attitude outweighed the risk he would reoffend and the need to deter. See N.J.S.A. 2C:44-1(b)(7), (9) (mitigating factors); N.J.S.A. 2C:44-1(b)(3), (9) (aggravating factors). The court noted that the intermittent sentence would enable Lowers to maintain his employment and to continue to support those who depended on him.
Stephen Nolan had at least three DUI convictions, according to his attorney. He was in his early fifties when he entered his guilty plea. He had a high school education, and earned a very modest income *226 working for a printing company. He was the sole support of his wife and son. He and his wife were in poor health. His attorney stated that if he were sentenced to a continuous term, he would lose his job and health insurance, and his family would be forced to turn to public assistance.
Consistent with Nolan's request, the court sentenced him to serve his 180-day parole-ineligible term from Friday evening to Sunday evening each week. No probation was imposed. The court explained that an intermittent sentence would allow defendant to *222 keep his job and his health insurance. The court found his lack of a prior criminal record and his character and attitude outweighed the risk of reoffending and the need to deter. See N.J.S.A. 2C:44-1(b)(7), (9) (mitigating factors); N.J.S.A. 2C:44-1(a)(3), (9) (aggravating factors).
Courtney Swiderski, thirty-four years old at sentencing, had two prior DUI convictions. In accord with her plea agreement, her imprisonment was a condition of a two-year term of probation. She was sentenced to serve her 180-day term on Saturdays and Sundays. The court found that her lack of a criminal record, her character and attitude, and her amenability to probationary treatment outweighed the risk of her reoffending and the need to deter. See N.J.S.A. 2C:44-1(b)(7), (9), (10) (mitigating factors); N.J.S.A. 2C:44-1(b)(3), (9) (aggravating factors). The court found an intermittent sentence would enable her to preserve her long-term employment as a medical receptionist, and to enhance her prospects for success on probation.
In each of the five cases, the trial court stayed service of the sentence pending appeal.
II.
On appeal, the State, by the Camden County Prosecutor, contends that N.J.S.A. 2C:40-26 implicitly mandates a continuous term, and supersedes the more general authorization in N.J.S.A. 2C:43-2(b)(7) for intermittent sentences. Both the State and the Attorney General, as amicus curiae, analogize intermittent periods of release to parole, which N.J.S.A. 2C:40-26 prohibits during the minimum 180-day term. The State and the Attorney General argue that an intermittent sentence fails to fulfill the Legislature's punitive purpose in enacting N.J.S.A. 2C:40-26.
Defendants[5] and the New Jersey Public Defender, as amicus curiae, respond that a parole-ineligible term is not incompatible *223 with an intermittent sentence. They argue parole and intermittent periods of release fundamentally differ. In particular, intermittent periods of release, unlike parole, do not reduce the overall period of custody. Some defendants and the Public Defender argue that intermittent sentences will have a greater deterrent effect than a continuous sentence.
III.
The Code of Criminal Justice provides that the general authority to impose intermittent sentences must yield to specific sentencing provisions to the contrary. N.J.S.A. 2C:43-2. The crux of this appeal is whether such contrary provisions include the mandate of a 180-day parole-ineligible term for fourth-degree driving while suspended, N.J.S.A. 2C:40-26.
The power to impose intermittent sentences is found in the section authorizing various sentencing dispositions. N.J.S.A. 2C:43-2. Among other options, a court may sentence a defendant "[t]o imprisonment at night or on weekends with liberty to *227 work or to participate in training or educational programs." N.J.S.A. 2C:43-2(b)(7). That general authority bows to contrary provisions in N.J.S.A. 2C:43, and the Code more broadly. N.J.S.A. 2C:43-2(b). Subsection (a) of N.J.S.A. 2C:43-2 states that persons shall be sentenced in accord with N.J.S.A. 2C:43, "[e]xcept as otherwise provided by this code ...." Also, a court may impose an intermittent sentence (or another authorized sentence type) "[e]xcept as provided in subsection a. of this section and subject to applicable provisions of the code." N.J.S.A. 2C:43-2(b).
Thus, we must examine the mandatory 180-day sentencing provision for fourth-degree driving while suspended, to determine if it is incompatible with an intermittent sentence. The mandatory sentencing provision expressly supersedes "the term of imprisonment provided under N.J.S.[A.] 2C:43-6"-which prescribes a prison term of zero to eighteen months for a fourth-degree offense-and "the provisions of subsection e. of N.J.S.[A.] 2C:44-1"-which establish a presumption of non-incarceration for most *224 third and fourth-degree first-time offenders. N.J.S.A. 2C:40-26(c). However, it does not expressly override N.J.S.A. 2C:43-2(b)(7). Thus, our focus is on the meaning and implication of the language that the "sentence imposed shall include a fixed minimum sentence of not less than 180 days during which the defendant shall not be eligible for parole." N.J.S.A. 2C:40-26(c).
We are obliged to give effect to the Legislature's intent. State v. Harper, 229 N.J. 228, 237, 160 A.3d 1281 (2017). Our analysis begins with the statute's plain language. "If it clearly reveals the Legislature's intent, the inquiry is over." Ibid.; see also In re Kollman, 210 N.J. 557, 568, 46 A.3d 1247 (2012) ("If the plain language is clear, the court's task is complete."). We ascribe to words their "ordinary meaning and significance, and read them in context with related provisions so as to give sense to the legislation as a whole." DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005) (citations omitted). We must avoid literalism that would lead to absurd results, or violate the overall statutory scheme and its goals. Perrelli v. Pastorelle, 206 N.J. 193, 200-01, 20 A.3d 354 (2011). When the face of a statute is thereby unclear, or ambiguous, we may resort to extrinsic legislative materials to discern legislative intent. Harper, 229 N.J. at 237, 160 A.3d 1281. If ambiguity remains, despite such review, it must be resolved in favor of a criminal defendant. State v. Regis, 208 N.J. 439, 452, 32 A.3d 1109 (2011).
Turning to the statutory language, we find no basis for the argument that an intermittent sentence under N.J.S.A. 2C:43-2(b)(7) violates the parole ineligibility term mandated by N.J.S.A. 2C:40-26. Simply put, periodic release under an intermittent sentence is not parole.
The essential nature of parole is release from custody before a prisoner has completed his or her imposed term, subject to conditions that, if satisfied, will reduce the prisoner's total period of confinement. "Parole is a period of supervised release 'by which a prisoner is allowed to serve the final portion of his *225 sentence outside the gates of the institution on certain terms and conditions, in order to prepare for his eventual return to society.' " State v. Black, 153 N.J. 438, 447, 710 A.2d 428 (1998) (quoting State v. Oquendo, 262 N.J. Super. 317, 324, 621 A.2d 24 (App. Div.), rev'd on other grounds, 133 N.J. 416, 627 A.2d 1127 (1993) ).
Parole may reduce real time in custody for a flat sentence by as much as two-thirds, not counting commutation time and work credits that may further reduce the parole eligibility term.
*228 N.J.S.A. 30:4-123.51(a) ; N.J.A.C. 10A:71-3.2(a), -3.2(g).[6] However, a defendant sentenced to a county jail term must serve at least sixty days before parole eligibility. N.J.S.A. 30:4-123.51(g). A prisoner who violates the conditions of his or her release risks the revocation of parole, and the return to custody for the balance of his or her custodial term. State v. Franklin, 175 N.J. 456, 470, 815 A.2d 964 (2003).
By contrast, periods of release during service of an intermittent sentence do not reduce the total time of confinement. Rather, they simply interrupt the days of custody. As our late, esteemed colleague noted while sitting in the trial court, "The duration of [a] custodial term remains the same whether it is served consecutively or on weekends." State v. Silva, 236 N.J. Super. 90, 92, 564 A.2d 138 (Law Div. 1989) (Rodriguez, J.). Thus, he rejected the State's contention that weekend service of a plea-bargained 180-day custodial sentence for a school zone offense, N.J.S.A. 2C:35-7, was a "lesser term of imprisonment" under N.J.S.A. 2C:35-12. Id. at 91-93, 564 A.2d 138. As John M. Cannel notes, "[S]ubsection b(7) merely authorizes flexibility in the way imprisonment is to be served ...." Cannel, N.J. Criminal Code Annotated, cmt. 7 on N.J.S.A. 2C:43-2 (2017).
Furthermore, the State's and the Attorney General's intermittent-release-is-like-parole argument fails because an intermittent *226 sentence does not subject a defendant to parole-like conditions or supervision. Nor does N.J.S.A. 2C:43-2(b)(7) authorize a court to modify an intermittent sentence, based on an offender's behavior during periods of release.
We also reject the contention that implicit in the mandate of a 180-day sentence is the requirement that the days be served without interruption. The statute does not say so expressly. By contrast, in multiple other provisions, the Legislature expressly stated when a period of days shall be "consecutive days." See, e.g., N.J.S.A. 2C:7-2(a)(2) ; N.J.S.A. 2C:46-2(a)(2) ; N.J.S.A. 2C:43-8.1 ; see also N.J.S.A. 2A:4A-43(c)(1) (disposition of delinquency cases).
"A person convicted of an offense under ... [ N.J.S.A. 2C:40-26(a) or -26(b) ] shall be sentenced by the court to a term of imprisonment." N.J.S.A. 2C:40-26(a), -26(b). According to the State, "term of imprisonment" implies uninterrupted service. The State's argument proves too much. If "term" were read to mean an uninterrupted period of time, then even the general provision that fourth-degree offenders shall receive a "specific term" not more than "18 months," N.J.S.A. 2C:43-6(a)(4), would preclude intermittent sentences. Thus, not even the least serious criminal offender would be eligible for an intermittent sentence under the Code. We reject such an interpretation.
We are persuaded that "term of imprisonment" means simply a period of imprisonment, which does not preclude an intermittent period. See Silva, 236 N.J. Super. at 92-93, 564 A.2d 138 (holding, based on the dictionary definition of "term," that "term of imprisonment" refers to "the length or duration of confinement rather than the manner in which it is to be served").
Nor does the use of the word "fixed" imply an uninterrupted sentence. See N.J.S.A. 2C:40-26(c) (requiring custodial term for fourth-degree driving while suspended *229 to "include a fixed minimum sentence of not less than 180 days"). As the past participle of the verb "to fix," "fixed" evidently means that the 180-day minimum is set, and cannot be reduced, either by the court, or by application of commutation time or work credits. See *227 Karatz v. Scheidemantel, 226 N.J. Super. 468, 470-72, 544 A.2d 897 (App. Div. 1988) (holding that "fixed minimum sentence" under N.J.S.A. 2C:14-6 could not be reduced by commutation credits).[7] In that respect, a "fixed minimum sentence" is not substantively different from a "mandatory minimum sentence." See N.J.S.A. 2C:43-7.2(b) ; cf. N.J.S.A. 2C:43-6.2(a) (referring to "mandatory minimum term"); N.J.S.A. 2C:43-6.3 (using "mandatory minimum sentence" and "mandatory minimum term" interchangeably).[8]
The Legislature tellingly chose to define the sentence in terms of 180 days, not six months, or half-a-year. A day is "[a]ny 24-hour period; the time it takes the earth to revolve once on its axis." Black's Law Dictionary 479 (10th ed. 2014). Thus, any continuous twenty-four-hour period of custody satisfies a day's imprisonment. By contrast, a month is "[a]ny time period approximating 30 days," id. at 1161, or the "period extending from a date in one calendar month to the corresponding date in the following month," The American Heritage Dictionary 812 (2d College ed. 1985). Had the Legislature defined the sentence in terms of months, one could make a stronger argument that the Legislature intended the days be served consecutively in groups of at least thirty. The Legislature did not.[9]
However, the plain meaning of a "day" precludes counting a nightly stint of say, twelve hours, as one of the 180 days requ *228 ired.[10] Furthermore, aggregating *230 two twelve-hour nightly stints would constitute only the equivalent of a day (and a rough equivalent at that, as it would join one night-time period with another of the same, rather than with one day-time period). Where the Legislature has approved such aggregation, it has said so. In municipal court, "[a] court may order that a sentence of imprisonment be served periodically on particular days, rather than consecutively." N.J.S.A. 2B:12-22. In such circumstances, the Legislature expressly provided, "The person imprisoned shall be given credit for each day or fraction of a day to the nearest hour actually served." Ibid. [11]
The Public Defender conceded at oral argument that a defendant sentenced to nights pursuant to N.J.S.A. 2C:43-2(b)(7)
*229 should be credited only with the fraction of the day served, toward the 180-day minimum. Thus, an offender receiving an intermittent term of nights would serve, hour-for-hour, the same period in custody as one who served 180 days continuously. However, we conclude that aggregation of partial days is not permitted by the plain language of N.J.S.A. 2C:40-26(c), particularly absent express authority to do so as found in N.J.S.A. 2B:12-22. "The law will not ordinarily concern itself with fractions of a day; the day is deemed to be the single unit of time, unless the statute ... expressly provides for a different approach." U.S. Steel Corp. v. Dir., Div. of Taxation, 38 N.J. 533, 539, 186 A.2d 266 (1962).
We recognize that a mandatory minimum sentence substantially restricts a court's sentencing discretion. A judge may not reduce a mandatory minimum sentence nor "impose a sentence that, in length or form, is different from that plainly provided in the statute." State v. Lopez, 395 N.J. Super. 98, 107-08, 928 A.2d 119 (App. Div. 2007). For example, under the Graves Act, a judge may not suspend a mandatory minimum sentence, impose a non-custodial disposition, or impose an indeterminate term for a youthful offender. State v. Des Marets, 92 N.J. 62, 64, 74, 455 A.2d 1074 (1983).
Under N.J.S.A. 2C:40-26 in particular, we held that the statute did not allow for service of the sentence in an inpatient drug rehabilitation program, French, 437 N.J. Super. at 338, 98 A.3d 603 ; on home detention, Harris, 439 N.J. Super. at 160, 106 A.3d 1265 ; or community service, ibid."Because N.J.S.A. 2C:40-26(c) requires a 'fixed minimum sentence of not less than 180 days' without parole eligibility for violations of N.J.S.A. 2C:40-26(b), a sentence to a non-custodial 'alternative program,' instead of jail, is plainly illegal." Ibid. Cf. State v. Toussaint, 440 N.J. Super. 526, 535-37, 114 A.3d 1016 (App. Div. 2015) (holding that absent clear limiting language as found in N.J.S.A. 2C:40-26(c), N.J.S.A. 39:3-40(e) did not preclude sentence to home confinement).
However, an intermittent sentence under N.J.S.A. 2C:43-2(b)(7) does not vary the length of the sentence provided by *230 N.J.S.A. 2C:40-26. Nor does it vary the form of the sentence-which is custodial-into one that is not. An intermittent sentence is still a term of imprisonment. It is not a commitment to a rehabilitation program, even one that is inpatient. An intermittent sentence is also not a non-custodial sentence, as the offender does not satisfy the sentence during the intervening non-custodial *231 periods. N.J.S.A. 2C:43-2(b)(7)"is not really an alternate sentencing provision in the same way as" N.J.S.A. 2C:43-2(b)(5), authorizing community release or community service, or N.J.S.A. 2C:43-2(b)(6), authorizing sentence to a half-way house or residential community facility. Cannel, N.J. Criminal Code Annotated, cmt. 7 on N.J.S.A. 2C:43-2 (2017).[12]
Although we find no ambiguity in N.J.S.A. 2C:40-26, relating to the permissibility of intermittent sentences, the State and the *231 Attorney General nonetheless resort to the provision's legislative history. However, the extrinsic materials fall short of compelling the result they seek. No doubt, the Legislature intended to stiffen the punishment for certain repeat offenders who drive with a suspended or revoked license. State v. Carrigan, 428 N.J. Super. 609, 613, 55 A.3d 87 (App. Div. 2012) (noting that prior to enactment of N.J.S.A. 2C:40-26 the sanction under Title 39 was ten to ninety days in jail, without a mandatory minimum parole ineligible term). The statute tars offenders with criminal records, and imposes significant terms of incarceration, whether intermittent or not.
The State contends that the Legislature's overriding intent was simply to get recidivists off the road. However, we have found no evidence in the legislative history-nor does the State or the Attorney General point to any-that the Legislature so intended, let alone that it contemplated taking a driver off the road for 180 continuous days, as opposed to 180 non-continuous days. Had the Legislature's focus been separating offenders from vehicles, non-jail custodial alternatives such as inpatient treatment may have been acceptable. Notably, N.J.S.A. 2C:40-26 does not impose a period of license suspension in addition to the custodial sentence.[13] Furthermore, a person convicted of a crime under N.J.S.A. 2C:40-26(a) or (b) who is in and out of jail over ninety weekends (assuming a weekend sentence from Friday night to the *232 same time on Sunday night), would be repeatedly reminded of his or her crime and its punishment. After a year and a half, that person, still serving his or her sentence, may be more deterred than a person who finished a continuous sentence a year earlier.
We acknowledge that the sponsor of the bill that added N.J.S.A. 2C:46-20 to the Code equated the mandated 180-day *232 parole ineligible term to a six-month period. See Sponsor's Statement to A. 4303 (Nov. 30, 2009) ("A person convicted of violating the bill's provisions is to be sentenced to a term of imprisonment which would include a six month period of parole ineligibility."); see also Assemb. Law & Pub. Safety Comm. Statement to Assemb. Comm. Substitute for A. 4303 (Dec. 3, 2009) (same). However, the legislative history may not create ambiguity that is absent on the face of the statute. See DiProspero, 183 N.J. at 506, 874 A.2d 1039 (declining to rely on "legislative history ... to create an ambiguity in an otherwise clear statute"). We decline to rewrite the "180 days" as found in the statute, to state "six months." "[A] court may not rewrite a statute or add language that the Legislature omitted." State v. Munafo, 222 N.J. 480, 488, 120 A.3d 170 (2015). We conclude the reference to six months in the sponsor's statement was simply an imprecise summary of the statutory language, without anticipating the issue of intermittent sentencing presented to us.
Finally, even if the State's and the Attorney General's readings of N.J.S.A. 2C:40-26(c) were plausible, they at most leave us with an ambiguous penal enactment, because the contrary reading is no less plausible. As discussed above, extrinsic legislative materials do not address the interpretative issue before us. Therefore, the rule of lenity would compel us to reject the State's and Attorney General's construction of N.J.S.A. 2C:40-26(c). Compare Rosado, 131 N.J. at 430, 621 A.2d 12 (applying the rule), with Regis, 208 N.J. at 452, 32 A.3d 1109 (declining to apply rule).
Based on the foregoing analysis, we are constrained to reverse and remand the sentences of Rene Rodriguez and Elizabeth Colon, as N.J.S.A. 2C:46-20(c) precludes a partial-day, nights-only sentence under N.J.S.A. 2C:43-2(b)(7). As for Eric Lowers and Stephen Nolan, we modify their sentences to provide that the commencement of their service on Friday evening, shall not occur at a time earlier in the day than their release on Sunday evening, to assure credit for two days. We remand for reconsideration of the sentence of Courtney Swiderski, who was sentenced to imprisonment *233 on Saturday and Sunday. Unless she reports at the very beginning of Saturday until the very end of Sunday, she would complete service of only one day each weekend.
We close with brief observations about intermittent sentences and the Legislature's efforts to address "the scourge of intoxicated driving ...." State v. Denelsbeck, 225 N.J. 103, 120, 137 A.3d 462 (2016). The Supreme Court has expressed its "commitment to eliminating intoxicated drivers from our highways ...." State v. Hessen, 145 N.J. 441, 458, 678 A.2d 1082 (1996). The Court has also recognized the Legislature's "increased emphasis on incarceration" to combat driving under the influence by recidivists. Denelsbeck, 225 N.J. at 120, 137 A.3d 462. Enactment of N.J.S.A. 2C:46-20 is consistent with that direction.
It is not for us to question or endorse the Legislature's policy judgment. We respect it. We are mindful of the devastating toll that impaired driving exacts upon society. We also acknowledge the erosion of the enforcement scheme that results from persons driving while suspended. That is *233 so, even if they are unimpaired when they do so, although too often they are impaired, resulting in tragic consequences.
However, the Legislature added N.J.S.A. 2C:46-20 to a Code that, since the Code's enactment in 1978, has authorized intermittent sentences. L. 1978, c. 95. Although not included in the original proposed revision of the New Jersey criminal law, see I The New Jersey Penal Code, Final Report of the New Jersey Criminal Law Revision Commission § 2C:43-2 (1971), the Legislature found it appropriate to include intermittent sentencing as a sentencing option. In so doing, it followed other states that, in one form or another, have authorized such dispositions. Nicolette Parisi, Part-Time Imprisonment: The Legal and Practical Issues of Periodic Confinement, 63 Judicature 385 (1980) (surveying various state laws on intermittent sentencing); see also Model Penal Code and Commentaries § 6.02 n.28 (Am. Law Inst. 1985) (noting that Illinois and Michigan, like New Jersey, revised their criminal laws, *234 which were based on the Model Penal Code, to include authority for intermittent sentencing).
Intermittent sentences may preserve the deterrent and rehabilitative effect of a custodial sentence, while enabling an offender to continue to be employed, and avoid the financial and emotional burden that would result if he or she could not. See Silva, 236 N.J. Super. at 93, 564 A.2d 138 ; Parisi, 63 Judicature at 391-93. We are unpersuaded that the Legislature, in adopting the stiffened penalties in N.J.S.A. 2C:46-20, intended to bar an intermittent sentence, absent which an offender like Stephen Nolan would lose his job and health insurance, and his wife and child would likely seek public assistance.
We also need not decide here whether an intermittent sentence is "easier time" or "harder time" than a continuous one. We presume that depends on the offender's personality and situation. See John M. Castellano, Practice Insights, N.Y. Penal Law § 85.00 (Lexis Nexis 2018) (noting that "[f]or many reasons, not all defendants have the ability to handle the difficult prospect of regular re-incarceration or its attendant stresses"). An intermittent prisoner faces potentially severe consequences for failing to return timely to custody. See N.J.S.A. 2C:29-5 (defining crime of escape to include the unauthorized failure "to return to official detention following temporary leave granted for a specific purpose or limited period").
In sum, the Legislature has provided intermittent sentencing as an option to sentencing courts. We decline to find that it chose to preclude that sentencing option in N.J.S.A. 2C:40-26 absent a clear expression of the intent do so.
Reversed and remanded as to Rodriguez and Colon; modified as to Lowers and Nolan; and remanded for reconsideration as to Swiderski. We do not retain jurisdiction. We stay our decision for thirty days, to enable a party to seek any relief from the Supreme Court.

Rene Rodriguez, Eric Lowers, and Stephen Nolan also pleaded guilty to violating N.J.S.A. 39:3-40. The sentences for the Title 39 violations were ultimately merged into the sentences for the fourth-degree crimes, but the mandatory penalties survived.

The second indictment included a drug possession charge, which was dismissed as part of his plea agreement.

Colon's indictment charged a violation of N.J.S.A. 2C:40-26(b), which requires at least two prior DUI convictions. Colon only admitted to one. Although her indictment was not formally amended, her judgment of conviction stated she was convicted of N.J.S.A. 2C:40-26(a), which requires only one DUI, but two or more instances of driving while suspended for that DUI. However, in her allocution, Colon did not mention a prior instance of driving while suspended. We note the record on appeal does not include any defendant's driver abstract, which would indicate each defendant's prior motor vehicle violations. However, the trial court apparently possessed the abstracts, based on the references to them in the sentencing hearings.

In his allocution to the fourth-degree offense, Lowers admitted the offense was committed on January 2, 2013. However, the indictment stated that offense occurred on October 5 of the preceding year. In a later allocution to violating N.J.S.A. 39:3-40, he admitted he was driving on October 5. Defendant had six prior convictions for driving while on the revoked list, the last one in 1999, but none while suspended for DUI.

Defendant Colon has not filed a brief.

For example, with such credits, a first-time offender sentenced to a flat three-year term is eligible for parole after nine months. See New Jersey Parole Board, Parole Eligibility Basic Calculations at 17 (2002) (parole eligibility table for first-time offenders).

We recognize the Parole Act expressly states that such credits shall not reduce a mandatory minimum sentence. See N.J.S.A. 30:4-123.51 ; see also N.J.A.C. 10A:9-5.2 ; N.J.A.C. 10A:31-23.1.

Elsewhere in the Code, "to fix" may be used to create an immutable term. See, e.g., N.J.S.A. 2C:43-7.2 (stating that a court "shall fix a minimum term of 85% of the sentence imposed, during which the defendant shall not be eligible for parole"). Or, it may not. See, e.g., N.J.S.A. 2C:43-6(a) (noting that regular flat sentences "shall be fixed by the court" for the periods specified). We are aware of only one other section of the Code, N.J.S.A. 2C:14-6, which uses the phrase "fixed minimum sentence."

We recognize, by an alternative definition, a day is the twenty-four-hour period beginning at midnight. See A Dictionary of Modern Legal Usage 247 (2d ed. 1995) (stating that a day is "the period of 24 hours, beginning at the stroke of midnight"). Similarly, a month may be the period beginning on the first of any of the twelve months, and a year as the period beginning on January 1st. However, it would be absurd to conclude, in interpreting the statutes before us, that a sentence in days, months, or years, must begin at 12:01 a.m.; on the first day of the month; or on the first day of January, respectively.

To demonstrate the asserted unfairness of an intermittent sentence, the State contended in oral argument that partial days must count as a full day, using the counting mechanism for jail credits. R. 3:21-8(a) (stating that a "defendant shall receive credit on the term of a custodial sentence for any time served in custody ... between arrest and the imposition of sentence"); see also State v. C.H., 228 N.J. 111, 117, 154 A.3d 1262 (2017) ("Jail credits are 'day for day credits.' ") (quoting State v. Rawls, 219 N.J. 185, 192, 97 A.3d 1142 (2014) ). Thus, the State contended, a twenty-four-hour period of incarceration beginning one calendar day and ending the next would count as two days, thereby enabling a defendant with an intermittent sentence to serve significantly less actual time in custody than a defendant with a continuous sentence. However, the counting rule for jail credit pertains to time in custody "before sentence is ever pronounced ...." State v. Rosado, 131 N.J. 423, 429, 621 A.2d 12 (1993). The rule was devised for a different purpose and does not bind our effort to reconcile N.J.S.A. 2C:40-26 and N.J.S.A. 2C:43-2(b)(7).

The allowance of partial day credit pre-dates enactment of the Code in 1978, L. 1978, c. 95. See L. 1969, c. 146, § 1, codified at N.J.S.A. 2A:8-30.1 (allowing fractional credit of intermittent sentences for offenses punishable by imprisonment for thirty days or less), repealed by L. 1993, c. 293, § 6.

In State v. Kotsev, 396 N.J. Super. 389, 934 A.2d 642 (App. Div. 2007) and State v. Luthe, 383 N.J. Super. 512, 892 A.2d 736 (App. Div. 2006), the court interpreted N.J.S.A. 39:4-50(a)(3), which states that a person convicted of a third or subsequent DUI shall be sentenced to "imprisonment for a term of not less than 180 days," but up to ninety days may be served in an inpatient rehabilitation program. In Kotsev, the defendant argued the court should have sentenced him to ninety days in the Sheriff's Labor Assistance Program (SLAP), instead of jail. 396 N.J. Super. at 390, 934 A.2d 642. Holding that non-custodial sentences were not allowed, the panel stated, "SLAP is not an option." Id. at 392, 934 A.2d 642. It then added without further analysis in dictum, "Weekend service is not an option." Ibid.
In Luthe, we rejected defendant's argument that the trial court's refusal to consider "alternative sentencing options" denied her equal protection. 383 N.J. Super. at 513-15, 892 A.2d 736. We held, "There is no statutory authority for work release programs, out-patient treatment, or the like as an alternative." Id. at 515, 892 A.2d 736. Presented with anecdotal information that some trial courts imposed such dispositions, including "weekend reporting," the panel stated, "[I]f disparity exists as to the use of these alternative programs, it must cease, consistent with our construction of the statute." Id. at 516, 892 A.2d 736.
The references to weekend sentences in Kotsev and Luthe are dicta. They also pertain to a different violation of a different statute with a different legislative history, and did not discuss N.J.S.A. 2C:43-2(b)(7). The decisions do not persuade us that weekend sentences under N.J.S.A. 2C:43-2(b)(7) are non-custodial dispositions. Notably, neither the State nor the Attorney General rely on Kotsev or Luthe in their briefs before us.

As part of Courtney Swiderski's plea agreement, the State dismissed the N.J.S.A. 39:3-40 charge against her, which would have mandated a license suspension period, if convicted. Evidently, Elizabeth Colon was not charged with violating N.J.S.A. 39:3-40. The State did not seek her license suspension under N.J.S.A. 2C:43-2(c).