**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5041-16T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

VICTOR FERRIGNO,

    Defendant-Appellant.

_____

          Submitted November 26, 2018 – Decided February 14, 2019

          Before Judges Sabatino, Haas and Sumners.

          On appeal from Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 15-08-0994.

          Kevin G. Roe, attorney for appellant.

          Dennis Calo, Acting Bergen County Prosecutor, attorney for respondent (William P. Miller, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Following defendant Victor Ferrigno's guilty plea to operating a motor vehicle while his license was suspended for a second or subsequent violation of driving while intoxicated (DWI), N.J.S.A. 2C:40-26(b), the trial judge imposed a mandatory minimum 180-day jail sentence without parole eligibility, N.J.S.A. 2C:40-26(c). Guided by well-established law, we reject defendant's appeal in which he contends the Legislature did not intend the statute to limit the judge's discretion to sentence him to less than the mandatory minimum jail term. We also find no merit in defendant's federal and state constitutional arguments that the mandatory minimum jail term violates the prohibition against cruel and unusual punishment, and deprives him of equal protection and due process. Accordingly, we affirm.

I

On October 31, 2014, a Norwood Borough police officer stopped defendant because his passenger side headlight was inoperable. Defendant gave the officer a New Jersey driver's license that the officer, upon close inspection, advised him was counterfeit. Defendant denied the accusation and, after providing a fake birthdate and social security number to the officer, agreed to the officer's request to sign a written consent form to search his car. In signing the form, defendant – in a Freudian slip – wrote his real name rather than the

name that appeared on the counterfeit license. Defendant was arrested and later indicted for fourth-degree second violation of operating a motor vehicle during license suspension, N.J.S.A. 2C:40-26(b), and fourth-degree possession of a false government issued identification, N.J.S.A. 2C:21-2.1(d).

After defendant's application for a pretrial intervention program (PTI) was rejected, he filed motions to appeal the decision and to dismiss the indictment, claiming N.J.S.A. 2C:40-26 was unconstitutional.[1] The judge denied the motions.

Defendant thereafter entered into a plea agreement in which he pled guilty to a second violation of operating a motor vehicle during license suspension and the State dismissed the charge of possession of a false government issued identification. The judge, despite finding that the mitigating factors outweighed the aggravating factors, sentenced defendant to a mandatory minimum 180-day jail term based upon his interpretation of N.J.S.A. 2C:40-26. Defendant does not assert he was not on notice that subsequent violations of driving while suspended for DWI would result in a mandatory period of incarceration. In pertinent part, the statute provides:

> b. It shall be a crime of the [fourth-degree] to operate a motor vehicle during the period of license suspension

---

[1] Denial of defendant's PTI application was not appealed.

in violation of [N.J.S.A. 39:3-40], if the actor's license was suspended or revoked for a second or subsequent violation of [N.J.S.A. 39:4-50] or section 2 of P.L. 1981, c. 512 ([N.J.S.A. 39:4-50.4(a)]). A person convicted of an offense under this subsection shall be sentenced by the court to a term of imprisonment.

c. Notwithstanding the term of imprisonment provided under [N.J.S.A 2C:43-6] and the provisions of subsection e. of [N.J.S.A 2C:44-1], if a person is convicted of a crime under this section the sentence imposed shall include a fixed minimum sentence of not less than [180-days] during which the defendant shall not be eligible for parole.

[N.J.S.A. 2C:40-26 (emphasis added).]

As set forth in the plea agreement, defendant's jail sentence was stayed pending this appeal that the sentence was illegal.

II

In his merits brief, defendant contends:

I. N.J.S.A. 2C:40-26 FAILS TO REFLECT THE LEGISLATURE'S INTENT BY REMOVING JUDICIAL DISCRETION, WHICH THEY EXPRESSLY BELIEVED COURTS WOULD RETAIN TO AVOID UNJUST RESULTS.

II. THE MANDATORY SIX-MONTH SENTENCE UNDER N.J.S.A. 2C:40-26 CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHTH AMENDMENT AND THE NEW JERSEY CONSTITUTION.

4

III. THE MANDATORY SIX-MONTH SENTENCE UNDER N.J.S.A. 2C:40-26 IS BOTH FUNDAMENTALLY UNFAIR AND DISCRIMINATORY IN VIOLATION OF EQUAL PROTECTION AND THE FUNDAMENTAL RIGHT TO LIBERTY ENSHRINED IN THE DUE PROCESS CLAUSE.

We address these arguments in the order presented.

A. Lack of Judicial Discretion

Defendant contends that the Legislature did not intend to eliminate a judge's discretion to sentence a violator of N.J.S.A. 2C:40-26 to a jail term of less than the 180-days in order to avoid an unjust result. He references remarks during the statute's floor debate by one State Assemblyperson, who avowed:

> A judge will always have the discretion. They can dismiss for any reason, but technically, and I'll tell you, there are municipal judges in this state, who are unreasonable. And there's municipal prosecutors who are unreasonable. And you walk in with somebody with a reasonable story . . . and you know what [they will] say, well guess what, there's no exception to the law.
>
> [Hearing on A4303 Before the Assemb. Comm. On Law and Public Safety, 2009 Leg., 213th Sess., Audio Recording 1:36:10 (Dec. 3, 2009) (statement of RepresentativeBramnick) ttps://www.njleg.state.nj.us/media/mp.asp?M=A/2009/ALP/1203-0200PM-M0-1.M4A&S=2008]

Because no one in the Legislature made any comment dismissing these remarks, defendant maintains that the Assembly Committee on Law and Public Safety

5

had a "shared understanding" that the statute would "preserve[] judicial discretion" at sentencing. Defendant thus surmises the statute as written misconstrued the Legislature's intention to provide a sentencing judge with discretion to give a defendant less than a 180-day jail term, and has continuously induced this court to incorrectly uphold the penalty of a fixed minimum term. We conclude this argument is unconvincing, as it flies in the face of our well-settled rules of statutory interpretation.

In determining the interpretation of a statute, our review is de novo. State v. Frank, 445 N.J. Super. 98, 105 (App. Div. 2016). It is well settled that a primary purpose of "statutory interpretation is to determine and 'effectuate the Legislature's intent.'" State v. Rivastineo, 447 N.J. Super. 526, 529 (App. Div. 2016) (quoting State v. Shelley, 205 N.J. 320, 323 (2011)). We start with considering "the plain 'language of the statute, giving the terms used therein their ordinary and accepted meaning.'" Ibid. And where "the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." Rivastineo, 447 N.J. Super.at 529. Hence, we do "'not "rewrite a plainly-written enactment of the Legislature [or] presume that the Legislature intended something other than

that expressed by way of the plain language."'" Ibid. (quoting Marino v. Marino, 200 N.J. 315, 329 (2009) (alteration in original)).

Yet, a statute's plain language "should not be read in isolation, but in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme." Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012). "'When all is said and done, the matter of statutory construction . . . will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation.'" J.H. v. R&M Tagliareni, LLC, 454 N.J. Super. 174, 187 (2018) (quoting Jersey City Chapter, P.O.P.A. v. Jersey City, 55 N.J. 86, 100 (1969)). Simply put, "[a]n absurd result must be avoided in interpreting a statute." Gallagher v. Irvington, 190 N.J. Super. 394, 397 (App. Div. 1983).

With these rules in mind, we are well aware that "when the Legislature has enacted a mandatory minimum term for the commission of a crime, the 'courts have no power' to impose a sentence that, in length or form, is different from that plainly provided in the statute." State v. Lopez, 395 N.J. Super. 98, 107-08 (App. Div. 2007) (quoting State v. Des Marets, 92 N.J. 62, 64-65

(1983)).  We still find instructive the words of Chief Justice Wilentz in <u>Des Marets</u>, that:

> We do not pass on the wisdom of this legislation's mandatory . . . imprisonment term or the wisdom of its imposition on the offenses covered.  That is a matter solely for the Legislature to decide.  Once the Legislature has made that decision, and has made it within constitutional bounds, our sole function is to carry it out.  Judges have no business imposing their views of "enlightened" sentencing on society, including notions of discretionary, individualized treatment, when the Legislature has so clearly opted for mandatory prison terms for all offenders.  It may be that the Legislature is more enlightened than the judges.  Our clear obligation is to give full effect to the legislative intent, whether we agree or not.
>
> [92 N.J. at 65-66 (citations omitted).]

Applying these principles, we conclude the judge appropriately determined that he was required to impose the mandatory 180-day minimum jail term under N.J.S.A. 2C:40-26 because of the statute's clear and plain language.  A lone legislator's comment, however well intended and firmly believed, prior to the statute's enactment does not dictate a contrary interpretation of the statute's unambiguous language, as suggested by defendant.  <u>See</u> <u>State v. Rodriguez</u>, 454 N.J. Super. 214, 232 (App. Div. 2018) ("[T]he legislative history may not create ambiguity that is absent on the face of the statute.").  As this court has consistently held, the statute requires a mandatory minimum incarceration period

of 180-days to carry out the Legislature's effort to deter the devastating effects of drunk driving.  See Rodriguez, 454 N.J. Super. at 230; State v. Rizzitello, 447 N.J. Super. 301, 315 (App. Div. 2016); State v. Harris, 439 N.J. Super. 150, 160 (App. Div. 2015); State v. French, 437 N.J. Super. 333, 335-36, 338 (App. Div. 2014). Moreover, this court has already interpreted the statute as precluding judicial discretion.  French, 437 N.J. Super. at 338.  In the face of these consistent rulings, the Legislature has chosen not to afford judicial discretion to sentence a violator of N.J.S.A. 2C:40-26 to less than 180-days in jail.

### B.  Constitutional Challenges

### 1.  Cruel and Unusual Punishment

In the alternative, defendant argues that N.J.S.A. 2C:40-26 violates federal and state constitutional prohibitions against cruel and unusual punishment because its minimum mandatory jail sentence offends contemporary notions of decency.  He maintains the statute would have been declared unconstitutional if the judge had considered that other states "impose substantially less minimum penalties" for the same conduct.  We disagree.

The Eighth Amendment of the United States Constitution prohibits cruel and unusual punishment and "guarantees individuals the right not to be subjected to excessive sanctions."  Roper v. Simmons, 543 U.S. 551, 560 (2005).  The

Eighth Amendment's provisions are applicable to the states through the Fourteenth Amendment. Ibid. New Jersey's analog to the Eighth Amendment similarly declares, "cruel and unusual punishments shall not be inflicted." N.J. Const. art. I, ¶ 12.[2]

The New Jersey Supreme Court has "developed a three-part test for determining whether a criminal penalty constitutes cruel and unusual punishment." State v. Johnson, 166 N.J. 523, 548 (2001) (citing State v. Maldonado, 137 N.J. 536, 556 (1994)). "We consider, first, whether the punishment conforms with contemporary standards of decency; second, whether the punishment is grossly disproportionate to the offense; and third, whether the punishment goes beyond what is necessary to accomplish any legitimate penological objective." Ibid.

When assessing the constitutionality of a legislatively fixed punishment, a court must presume validity. State v. Johnson, 206 N.J. Super. 341, 344 (App. Div. 1985). A court will not interfere with a prescribed penalty "unless it is so clearly arbitrary and without rational relation to the offense or so disproportionate to the offense as to transgress the Federal and State

---

[2] Although defendant contends N.J.S.A. 2C:40-26 violates the Eighth Amendment, he limits his reliance to New Jersey case law to support his claim.

constitutional prohibitions against excessive fines or cruel and unusual punishment." State v. Smith, 58 N.J. 202, 211 (1971); accord, Johnson, 206 N.J. Super. at 344. In the absence of such a showing, "the judiciary must respect the legislative will." State v. Hampton, 61 N.J. 250, 274 (1972).

Guided by these principles, we conclude defendant's argument that the mandatory minimum jail term under N.J.S.A. 2C:40-26 constitutes cruel and unusual punishment is without merit. The statute's purpose is to ensure the safety of the public and ensure that individuals whose licenses were suspended due to a DWI conviction do not continue to drive during their suspension, because their history of DWI creates a potential significant threat to public safety. See Rizzitello, 447 N.J. Super. at 315; Harris, 439 N.J. Super. at 160. Such a penalty is consistent with our state's contemporary standards of decency, is not grossly disproportionate to the crime, and accomplishes the legitimate goal of protecting society from drunk drivers.

We are equally unpersuaded by defendant's argument that because other states may not impose a similar penalty for the same conduct, our Legislature has imposed a penalty that reflects cruel and unusual punishment. That said, we note that most of the states cited by defendant impose harsher penalties of up to two years imprisonment, albeit with mandatory minimums of at least three

months, for the same or similar offense.[3]  Since N.J.S.A. 2C:40-26 is a fourth-degree offense, a violation can result in a sentence of up to eighteen months, but the Legislature decided there be at least a 180-day period of incarceration. N.J.S.A. 2C:43-6(a)(4).  In this regard, our statute is unexceptional and may result in a lighter sentence.

2.  Equal Protection

Defendant contends that his constitutional right to equal protection and due process was violated because N.J.S.A. 2C:40-26 treats subsequent DWI offenders who drive while their licenses are suspended differently than individuals whose licenses are suspended for other reasons.  He points out that the statute imposes a mandatory 180-day jail term that is eighteen times greater than the ten days imposed for driving while suspended under N.J.S.A. 39:3-40. Therefore, he asserts that because of his right to be free from confinement, the judge should have applied a strict scrutiny review of the statute "before

---

[3]  For example, Kansas requires a minimum sentence of ninety-days, K.S.A. 8-262; Delaware imposes a sixty-day minimum sentence with a maximum of one year and a minimum $1,000 fine, 21 Del.C. § 2756; Colorado imposes a thirty-day minimum sentence with a minimum $500 fine, Colo. Rev. Stat. Ann. § 42-2-138(1)(d)(I); Hawaii imposes a mandatory sentence of thirty-days imprisonment, Haw. Rev. Stat. § 291E-62.

imposition of an unjust and disproportionate mandatory sentence that ignores [his] mitigating circumstances." We disagree.

"'The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.'" Doe v. Poritz, 142 N.J. 1, 91 (1995) (quoting City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439, (1985)). "Equal protection does not preclude the use of classifications, but requires only that those classifications not be arbitrary." Ibid. (citation omitted). Under the Fourteenth Amendment, if a statute neither treats a suspect or quasi-suspect class disparately nor affects a fundamental right, then it will be upheld so long as it is "rationally related to a legitimate government interest." Doe, 142 N.J. at 92 (citations omitted).

An equal protection challenge to a legislative classification of offenders for purposes of fixing penalties is examined by utilizing the rational basis test. State v. Lagares, 127 N.J. 20, 34 (1992). "In such situations, the Legislature may provide different punishments for offenders convicted of the same crimes so long as there is some rational connection between the classification of offenders and a proper legislative purpose." Ibid. In enacting our Criminal

Code, the Legislature "has wide discretion in the creation or recognition of different classes of offenders for separate treatment[,]" State v. Smith, 58 N.J. 202, 207 (1971), and its enactments are entitled to a presumption of validity. In re P.L. 2001, Chapter 362, 186 N.J. 368, 392 (2006); Gangemi v. Berry, 25 N.J. 1, 10 (1957).

In light of the societal harm inflicted by drunk driving, the Legislature decided to deter those who chose to disregard the suspension of their driving privileges due to drunk driving by imposing a minimum mandatory jail term. Hence, providing a rational basis for the distinction drawn by the Legislature in terms of individuals driving while suspended due to non-drunk driving violations. We agree with the trial judge that the statute is presumed valid and that defendant has not established that "it doesn't accomplish any legitimate stated purpose." Therefore, we are convinced there is no merit in defendant's equal protection challenge.

3. Due Process

For the first time, defendant argues on appeal that N.J.S.A. 2C:40-26 violates the principle of fundamental unfairness under the due process clause of the Fourteenth Amendment because it is "an eighteen-fold increase in sentence[ing] for having two or more previous DWI's or license suspension

14

violations . . . " and "there is no limitation on how far back in [his] driving history one can look to satisfy the prior offenses[.]"  Normally, we would not consider issues, even constitutional ones, which were not raised before the trial judge.  State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006) (citations omitted).  For the sake of completeness, however, we choose to address defendant's due process claim.

The fundamental fairness doctrine derives from an implied judicial authority to create appropriate and just remedies and to assure the efficient administration of the criminal justice system.  State v. Abbati, 99 N.J. 418, 427 (1985).  The Supreme Court has described this doctrine as "an integral part of due process" that "is often extrapolated from or implied in other constitutional guarantees."  State v. Miller, 216 N.J. 40, 71 (2013) (quoting Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 578 (2008)); see also Abbati, 99 N.J. at 429.

The doctrine is applied "sparingly" and only where the "interests involved are especially compelling[;]" thus, if a defendant would be subject "to oppression, harassment, or egregious deprivation[,]" it is applied.  Doe, 142 N.J. at 108 (quoting State v. Yoskowitz, 116 N.J. 679, 712 (1989) (Garibaldi, J., concurring and dissenting)).  It can be applied "at various stages of the criminal justice process even when such procedures were not constitutionally

15

compelled." Ibid. (citations omitted). The doctrine's "primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals." Yoskowitz, 116 N.J. at 706 (emphasis omitted) (quoting State v. Currie, 41 N.J. 531, 539 (1964)).

The doctrine is an "elusive concept" and its "exact boundaries are undefinable." Id. at 704-05 (citation omitted). "For the most part, it has been employed when the scope of a particular constitutional protection has not been extended to protect a defendant." Id. at 705. It has been applied only in the clearest of cases. See State v. Maisonet, 166 N.J. 9, 13-21 (2001) (defendant was forced to appear for a jury trial over several days in a dirty and disheveled condition having been denied access to soap, running water, toothpaste or a comb); Doe, 142 N.J. at 108-09, 662 (the doctrine of fundamental fairness required the institution of procedural protections to determine classification of convicted sex offenders who would be subject to community supervision and notification provisions); State v. Tropea, 78 N.J. 309, 311-16, 394 (1978) (fundamental fairness precluded remand for retrial when the State failed to introduce evidence of an essential element of proof); State v. Baker, 310 N.J. Super. 128, 138 (App. Div. 1998) (fundamental fairness precluded the State from seeking death penalty based on deliberate prosecutorial misconduct in

seizing juror notes and releasing them to the press after conviction but before penalty phase had commenced).

Defendant's argument fails to establish the type of unquestionably unfair circumstances that have garnered past judicial support for application of the doctrine of fundamental fairness. Comparing the Legislature's imposition of a fixed minimum sentence for individuals who have two or more violations of driving while their license is suspended for drunk driving, while it has allowed far more leniency for offenses that have caused a suspension of driving privileges, is of no import. Of significance, this court has consistently upheld the statute's mandatory minimum 180-day jail term and defendant was on notice upon his convictions for DWI that subsequent violations of driving while suspended for DWI would result in such a penalty.

Affirmed. The stay of defendant's jail sentence shall expire effective thirty days from the date of this opinion and will not be extended further by this court.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5041-16T2