908 A.2d 861 (2006)
THE STATE OF NEW JERSEY, Plaintiff,
v.
RONALD GRABOWSKI, Defendant.
Municipal Appeal No. 4600
Superior Court of New Jersey, Law Division, Passaic County
Decided June 26, 2006
Jennifer Bedrin, Assistant County Prosecutor, for plaintiff (James F. Avigiliano, Passaic County Prosecutor).
Joel P. Bogorad for defendant.

OPINION
DELUCCIA, J.S.C.
The issue raised in this appeal is whether a defendant, having been convicted of a third or subsequent violation of N.J.S.A. 39:4-50, may be sentenced to periodic imprisonment pursuant to N.J.S.A. 2B:12-22 notwithstanding the provisions of Michael's Law (L. 2003, c. 315), which amended N.J.S.A. 39:4-50 and N.J.S.A. 39:4-51, and the ruling in State v. Luthe, 383 N.J. Super. 512 (App.Div. 2006). For the following reasons, this court concludes that periodic sentences authorized under N.J.S.A. 2B:12-22 are permitted dispositions for third and subsequent violations of N.J.S.A. 39:4-50(a)(3).
Defendant, appearing pro se, was found guilty by the Pompton Lakes Municipal Court for driving while intoxicated. Thereafter, continuing his self-representation, defendant appealed to the Superior Court, Law Division. The Law Division, at defendant's request, dismissed his appeal and remanded the matter to the municipal court for execution of judgment.
The defendant retained counsel to represent him at the remand hearing before the municipal court. His attorney unsuccessfully argued for the imposition of a periodic sentence in respect of the mandatory imprisonment required under the statute (N.J.S.A. 39:4-50(a)(3)) for third and subsequent offenders. The municipal court rejected defendant's arguments and sentenced defendant to ninety days in the county jail, ninety days of community service,[1] forty-eight hours in the Intoxicated Driver Resource Center (IDRC) and a ten-year loss of driver's privileges. Appropriate fines were also imposed. This represents the defendant's fourth conviction for violating N.J.S.A. 39:4-50. The matter is now before the Law Division upon defendant's appeal of the denial of his request for periodic incarceration.
The municipal court rejected defendant's request for periodic incarceration based upon the court's apparent, but mistaken, belief that the vicinage assignment judge had issued a "directive" prohibiting third and subsequent DWI offenders' admission into the Sheriff's Labor Assistance Program (SLAP), see N.J.S.A. 2B:19-5, or other "non-custodial" alternative programs. The municipal court apparently perceived that periodic sentences fell within the ambit of non-custodial sentences. Neither the parties' nor the court's independent research has uncovered the existence of any order or directive issued by the assignment judge of this vicinage prohibiting the sentencing of third and subsequent DWI offenders to non-custodial alternatives such as SLAP, work release or periodic sentences.
The court, however, is aware of a September 15, 2004, letter authored by the Honorable James J. Murner, Jr., Presiding Judge of the Municipal Courts in the Passaic vicinage, advising municipal court judges in this vicinage that the Conference of Presiding Judges of the Municipal Courts had reached a "consensus" that third-time DWI offenders were ineligible for SLAP sentences. Judge Murner's memorandum also stated that the Conference's "consensus" is in "full conformity" with the positions advanced by the Passaic Vicinage Assignment Judge and Criminal Presiding Judge.
The Appellate Division's decision in Luthe has resolved the issue as to whether SLAP, work release or other non-custodial alternatives are available for third and subsequent DWI offenders. That decision postdated the decision rendered by the municipal court in this case. To the extent, if at all, the municipal court relied upon Judge Murner's letter of September 15, 2004, as a "directive" to the municipal court judges of the Passaic vicinage in respect of their sentencing authority, such a directive would not be binding upon the various municipal courts or the Superior Court. See Booker v. N.J. State Parole Bd, 265 N.J. Super. 191, 199 n. 4 (App. Div.1993) (noting that directives issued by the Administrative Office of the Courts have no substantive effect in the interpretation of statutes or prior case law). Moreover, any such directive issued in the absence of a controlling judicial precedent would be ultra vires. "The judiciary does not determine the punishment for crimes. That is up to the Legislature." State v. Cannon, 128 N.J. 546, 559-60 (1992).
Defendant argues that the municipal court's determination that the assignment judge's "directive" regarding sentencing options for third and subsequent DWI offenders supersedes the statutory authorization for periodic sentencing is erroneous. The State essentially agrees with defendant's position that the municipal court misapplied the law when it concluded that it lacked authority to allow periodic incarceration based upon the purported directive. Notwithstanding the apparent agreement between the parties as to their respective positions on the law, this court is nevertheless obligated to independently review the law and render its own conclusions. Stipulations as to law do not bind the court. State v. Elysee, 159 N.J. Super. 380, 384 (App. Div. 1978).
In order to determine whether periodic imprisonment is authorized for third and subsequent DWI offenders, the court must analyze the statutes implicated. N.J.S.A. 2B:12-22 authorizes municipal courts to order a custodial sentence be served periodically on particular days rather than consecutively. This section was enacted as part of L. 1993 c. 293 and became effective February 15, 1994. The legislation repealed N.J.S.A. 2A:8-30.1, which statute previously permitted the imposition of periodic confinement for municipal court sentences of up to three months' duration. The subject section is part of a general law enacted concerning the establishment of the municipal courts and providing for their operation. The statute does not limit its operation to particular offenses.
On the other hand, N.J.S.A. 39:4-51 is a specific legislative enactment addressing sentencing options and dispositions for persons convicted of violating our drunk driving laws, i.e. N.J.S.A. 39:4-50. On January 20, 2004 the Legislature enacted L. 2003, c. 315, which amended N.J.S.A. 39:4-50 and N.J.S.A. 39:4-51. The act, known as "Michael's Law," authorized significant changes with respect to sentencing options for third and subsequent offenders of our drunk driving statute. Prior to the enactment of Michael's Law, N.J.S.A. 39:4-50(a)(3) required third and subsequent offenders to
be sentenced to imprisonment for a term of not less than 180 days, except that the court may lower such term for each day, not exceeding 90 days, served performing community service in such form and on such terms as a court shall deem appropriate under the circumstances. . . .
Michael's Law eliminated community service as a sentencing option for third and subsequent offenders. See State v. Luthe, supra, 383 N.J. Super. at 515.
Michael's Law also amended N.J.S.A. 39:4-51 which had authorized work release as a sentencing option for persons convicted of DWI. Previously, persons convicted of violating N.J.S.A. 39:4-50 were eligible to be released from the county jail or workhouse to a work release program in the discretion of the sentencing court. Michael's Law eliminated that option for third and subsequent offenders. Consequently, with the adoption of Michael's Law, the Legislature has limited authorized dispositions for persons convicted of third and subsequent offenses under N.J.S.A. 39:4-50 to imprisonment for 180 days in the county jail or workhouse or up to 90 days in an inpatient rehabilitation program with the balance of the sentence to be served in confinement.
Prior to Michael's Law, N.J.S.A. 39:4-51 required that all persons convicted of DWI offenses not be released from imprisonment in the county jail or workhouse after commitment until their term of imprisonment had been served. Specifically, the statute provided:
no warden or other officer having custody of the county jail workhouse shall release there from a person so committed, unless the person has been released by the court on a work release program, until the sentence has been served. [N.J.S.A. 39:4-51]
This language remains unchanged by the amendments incorporated by Michael's Law. However, as it is presently enacted "[t]here can be no question but that the statute applies solely to `[a] person who has been convicted of a first or second violation of Section 39:4-50. . . .'" State v. Luthe, supra, 383 N.J. Super. at 515.
N.J.S.A. 39:4-51 contains no corresponding requirement respecting third and subsequent offenders. Moreover, an examination of the other revisions enacted by Michael's Law, as they pertain to sentencing for third and subsequent offenders, does not reveal any analogous provisions relating to the sequencing of a custodial sentence.
This court concludes that the literal and plain language of N.J.S.A. 39:4-51 compels the conclusion that the requirement for continuous confinement to jail for violators of our drunk driving statute does not extend to third and subsequent offenders. Penal statutes that are open to more than one reasonable instruction must be construed strictly against the State. State v. Solarski, 374 N.J. Super. 176,180 (App. Div. 2005). To construe the statute to prohibit periodic sentencing for third and subsequent offenders would require more than judicial interpretation. It would require the court to re-write the statute entirely. The revisions to our drunk driving statutes affected by Michael's Law were substantial. Ordinarily, a change of statutory language implies a purposeful alteration in the substance of the law. DeProspero v. Penn, 183 N.J. 477, 494 (2005).
The amendments to N.J.S.A. 39:4-51 provided by Michael's Law, are clearly intended to complement the amendments incorporated in N.J.S.A. 39:4-50(a)(3). The result is the elimination of work release and community service as sentencing options for third and subsequent DWI offenders. As noted in Luthe, supra, N.J.S.A. 39:4-51 now only applies to first and second offenders. Whether this result was intentional on the part of the Legislature, or less than artful draftsmanship that resulted in legislative "blowback" (the concept of unforeseen and unintended consequences), is unclear. However, it is not for this court to completely re-write a statute which can be afforded a reasonable interpretation when construed as written.
It is beyond dispute that our drunk driving statute is quasi criminal in nature. State v. Solarski, supra, 374 N.J. Super. at 180. Our Supreme Court has stated that "we adhere to the time-honored interpretive guideline that uncertainty concerning the ambit of criminal statutes should resolve in favor of lenity" (internal citations and quotations omitted). State v. Dixon, 114 N.J. 111, 117 (1989). Furthermore, penal statutes are not to be extended by implication or intendment. If indeed the amendments to N.J.S.A. 39:4-51 as enacted in Michael's Law brought about an unintended result, then it is for the Legislature and not the courts to re-write the statute.
The question remains however, whether the result reached herein is inconsistent with the holding in State v. Luthe. In Luthe, the Appellate Division confronted the question of the availability of non-custodial alternatives, such as SLAP, work release and outpatient treatment as alternatives for third and subsequent DWI offenders. As noted, the Appellate Division found such sentencing alternatives statutorily unavailable for these offenders. In dicta, the Appellate Division noted that defense counsel's secretary conducted a survey of work release and other "non-custodial" programs purportedly available to third offenders convicted of DWI throughout this state. The survey noted the availability of "such alternatives as work release, home arrest, day reporting and weekend reporting." State v. Luthe, supra, 383 N.J. Super. at 516. While dismissing the competency of that evidence, the court went on to state that
if disparity exists as to the use of these alternative programs, it must cease, consistent with our construction of the statute. [Ibid. (emphasis added)]
The court thereafter referred the matter to the Administrative Director of the Courts for the issuance of a directive to ensure uniform compliance with the statute.
This court is persuaded that the Appellate Division has not ruled that periodic incarceration is unavailable to persons convicted of third and subsequent DWI offenses. The precise issue before the Appellate Division in Luthe was limited to the availability of non-custodial alternatives to the mandatory 180 days confinement required by N.J.S.A. 39:4-50(a)(3). It is submitted that periodic incarceration authorized by N.J.S.A. 2B:12-22 is materially different from the non-custodial alternatives considered in Luthe.
County work release is authorized pursuant to N.J.S.A. 30:8-44. That statute permits a person convicted of any offense, except certain sexual offenses, drug offenses or crimes of violence, to:
be placed at outside labor or permitted to attend a vocational training course operated or sponsored by a public or private agency in the county by the order of the court by which the sentence was imposed . . .
The statute further provides that when such a person is not so employed, and between the hours or periods of employment, he or she should be confined in jail. N.J.S.A. 30:8-48. Furthermore, prisoners who abscond or attempt to abscond while in work release, are deemed to have committed an escape and are subject to charges under N.J.S.A. 2C:29-5(a). Most importantly, inmates admitted to county work release programs may be granted a diminution of their sentence of up to one-quarter of their term for good conduct. N.J.S.A. 30:8-50.
Another non-custodial alternative considered in Luthe is SLAP, which is authorized by N.J.S.A. 2B:19-5. While the enabling statute does not provide for the rules and regulations for SLAP programs, this court has been advised that in Passaic County, persons sentenced to SLAP are considered inmates of the county jail and are subject to the same rules and regulations applicable to persons actually confined.
SLAP is generally modeled after the work release program authorized by N.J.S.A. 30:8-44. The Passaic County Sheriff has promulgated a list of twelve categories of crimes and offenses that per se bar an offender from participation in SLAP. These are similar to those which statutorily bar eligibility for county work release. See N.J.S.A. 30:8-44.1. Significantly, SLAP inmates are not confined at the jail when not performing their labor functions. In this respect, SLAP is materially different from county work release.
Persons sentenced to periodic imprisonment are in a distinctively different status from those in work release, SLAP or other non-custodial alternatives. While SLAP and work release inmates are earning jail time credit while not actually confined within the four walls of the penal institution, those persons under a sentence of periodic imprisonment receive jail credit only for each day or fraction of a day to the nearest hour actually served. See N.J.S.A. 2B:12-22. Consequently, a person serving a sentence of periodic imprisonment receives jail credit only for the time actually in the institution and no other. The effect is that those persons under such a sentence will serve no less time in the aggregate than those who serve their sentences consecutively. This, of course, is not the case with persons admitted into work release or SLAP programs.
Subsequent to the Luthe decision, the Administrative Director of the Courts issued a memorandum dated April 7, 2006, to all Judges of the Superior and Municipal Courts respecting uniform sentencing for third and subsequent DWI offenders. The Director reiterated the holding in Luthe that the imprisonment portion of a sentence imposed under N.J.S.A. 39:4-50(a)(3) must be served in a county jail or workhouse and not in work release or some other alternative program. The Director emphasized that participation in neither work release nor SLAP programs are available for third time DWI offenders. There is nothing within the Director's memorandum which indicates that periodic imprisonment shall be considered as a "non-custodial alternative" and subject to disqualification for third and subsequent DWI offenders.
Accordingly, this court is persuaded that the Appellate Division's reference to "home arrest, day reporting and weekend reporting" is dicta, and is not to be construed as the court's ruling that Michael's Law has preempted periodic sentences under N.J.S.A. 2B:12-22. It is noteworthy that the entire thrust of the opinion in Luthe was directed to the question of "judicial discretion to fashion non-custodial alternatives for third [DWI] offenders." 383 N.J. Super. at 515. Furthermore, the opinion is devoid of any mention of the statute authorizing periodic sentences of imprisonment.
The opinion in Luthe did not analyze the distinction between work release, SLAP and other non-custodial alternatives and periodic sentences. In fact, the holding of Luthe may be succintly summarized as follows:
Simply put, N.J.S.A. 39:4-50(a)(3) does not authorize non-custodial alternatives to the mandatory 180 days confinement, whether that confinement be served entirely in jail or partially in an inpatient facility. There is no statutory authority for work release programs, outpatient treatment, or the like as an alternative. [Ibid.]
This court is aware of the Supreme Court's admonition that "[t]rial judges are privileged to disagree with the pronouncements of appellate courts; the privilege does not extend to non-compliance." Reinauer Realty Corp. v. Paramus, 34 N.J. 406, 415 (1961). This court respectfully submits that the conclusions reached herein represent neither its disagreement with nor disobedience of the holding in Luthe. Luthe is merely distinguished.
Accordingly, for the reasons set forth herein defendant's sentence is modified as follows: Defendant is sentenced to 180 days in the Passaic County Jail; said sentence to be served periodically pursuant to N.J.S.A. 2B:12-22. Defendant shall report to the Passaic County Jail commencing Fridays at 6:00 p.m. and to remain confined therein until 6:00 p.m. the following Sunday and shall thereafter report consecutively on each succeeding week until the 180-day sentence imposed is completed. All fines and additional penalties imposed by the Pompton Lakes Municipal Court shall be re-imposed as part of this sentence.
NOTES
[1] Defendant concedes the municipal court erred in imposing community service as a component of his sentence. N.J.S.A. 39:4-51 limits community service to first or second DWI offenses. State v. Luthe, supra, 383 N.J. Super. at 515 (App Div. 2006).