NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0452-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

PEDRO C. ANICAMA,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **July 13, 2018**
>
> **APPELLATE DIVISION**

        Argued December 19, 2017 — Decided July 13, 2018

        Before Judges Yannotti, Carroll, and Leone.

        On appeal from Superior Court of New Jersey,
        Law Division, Hudson County, Municipal Appeal
        No. 06-16.

        Anthony R. Draucikas argued the cause for
        appellant (The Draucikas Law Firm, LLC,
        attorneys; Anthony R. Draucikas, on the
        brief).

        Stephanie Davis Elson, Assistant Prosecutor,
        argued the cause for respondent (Esther
        Suarez, Hudson County Prosecutor, attorney;
        Frances Tapia Mateo, Assistant Prosecutor, on
        the brief).

    The opinion of the court was delivered by

LEONE, J.A.D.

    Defendant Pedro C. Anicama appeals from the Law Division's

August 16, 2016 order. He received the mandatory 180-day sentence

for his third or subsequent conviction for driving while

intoxicated (DWI), N.J.S.A. 39:4-50(a)(3). The Municipal Court allowed him to serve his sentence by being in jail only two days a week, a form of periodic service. The Law Division reversed. Despite prior decisions by this court, it is apparently "not entirely clear whether a third or subsequent offender's mandatory prison term may be served on a periodic basis." Richmond & Burns, Municipal Court Practice § 29:3-3 (2017) (citing State v. Grabowski, 388 N.J. Super. 431 (Law Div. 2006)). We disapprove Grabowski and hold that a third or subsequent DWI offender is ineligible for periodic service of the mandatory 180-day sentence. Accordingly, we affirm the Law Division.

## I.

In his guilty plea colloquy, defendant admitted the following facts. On the evening of May 10, 2015, he consumed beer and a shot of scotch whiskey. The alcohol affected his ability to drive. As a result, defendant hit a parked car in the Town of Harrison and continued driving. He drove into the Borough of East Newark, and hit another parked car, and again kept driving to his house. When he parked at his home, police officers approached and arrested him. The officers found cocaine and a half-empty bottle of scotch whiskey in defendant's car. Defendant had three prior convictions for DWI, and a prior conviction for controlled substances.

Defendant was charged in East Newark with DWI; third-degree possession of a controlled dangerous substance; leaving the scene of an accident; failing to report an accident; reckless driving; careless driving; and having an open container of alcohol in a vehicle. He was charged in Harrison with leaving the scene of an accident. The charges were consolidated in the East Newark Municipal Court.

On March 10, 2016, defendant pled guilty in the Municipal Court to a third or subsequent DWI violation, N.J.S.A. 39:4-50(a)(3); disorderly-persons possession of drug paraphernalia, N.J.S.A. 2C:36-2; leaving the scene of an accident, N.J.S.A. 39:4-129(d); and careless driving, N.J.S.A. 39:4-97. Pursuant to the plea agreement, the other charges were dismissed, and he was sentenced to ten years' loss of driving privileges and 180 days of incarceration for the DWI charge, a suspended 180-day jail sentence and one year of probation for the paraphernalia offense, plus fines and other monetary assessments for those offenses, for leaving the scene, and for careless driving.

Defendant requested that the 180 days in jail for his DWI offense be served two days per week. He claimed serving his sentence continuously would result in the loss of his restaurant business. The Municipal Court found it had authority to allow such periodic service under N.J.S.A. 2B:12-22. The judge ordered

defendant to serve the 180 days "at a rate of not less than two consecutive days per week," with his "work schedule to be accommodated to the extent possible." Defendant began serving his sentence on Mondays and Tuesdays only.

The State appealed the "illegal sentence" on the DWI offense. After hearing argument, the Law Division issued a written opinion on August 26, 2016, reversing the Municipal Court. The Law Division ruled "[d]efendant's argument that periodic service is permissible pursuant to N.J.S.A. 39:4-50(a)(3) is without merit," and ordered defendant to surrender and serve the remainder of his sentence on consecutive days. Defendant appeals.[1]

## II.

Defendant raises an issue of statutory interpretation. "'[B]ecause statutory interpretation involves the examination of legal issues,'" we apply "'a de novo standard of review applies.'" State v. Nance, 228 N.J. 378, 393 (2017) (citation omitted). We must hew to that standard of review.

> A court's responsibility "is to give effect to the intent of the Legislature." To do so, we start with the plain language of the statute. If it clearly reveals the Legislature's intent, the inquiry is over. If a law is ambiguous, we may consider extrinsic sources including legislative history. We also look to extrinsic aids if a literal

---

[1] We have been told defendant's service of the remainder of his sentence has been stayed.

reading of the law would lead to absurd results.

[State v. Harper, 229 N.J. 228, 237 (2017) (citations omitted).]

### III.

The general statutes governing Municipal Courts provide that "[a] court may order that a sentence of imprisonment be served periodically on particular days, rather than consecutively. The person imprisoned shall be given credit for each day or fraction of a day to the nearest hour actually served." N.J.S.A. 2B:12-22. The issue is whether this general statute applies to defendants convicted of third or subsequent DWI violations under N.J.S.A. 39:4-50(a)(3). To decide this issue, we must review the changes regarding the jail term for third or subsequent DWI offenses made effective January 20, 2004 by "Michael's Law," L. 2003, c. 315.[2]

Michael's Law made the following pertinent amendments to the existing statutes, with the additions and [deletions]. First, Michael's Law amended N.J.S.A. 39:4-50(a)(3):

> For a third or subsequent violation, a person . . . shall be sentenced to imprisonment for a term of not less than 180 days in a county jail or workhouse, except that the court may lower such term for each day, not exceeding

---

[2] Contrary to defendant's argument, Michael's Law was enacted after N.J.S.A. 2B:12-22. N.J.S.A. 2B:12-22 was adopted in L. 1993, c. 292, § 1, and became effective on February 15, 1994.

90 days, served **[**performing community service in such form and on such terms as the court shall deem appropriate under the circumstances**]** <u>participating in a drug or alcohol inpatient rehabilitation program</u> . . .

[N.J.S.A. 39:4-50(a)(3) (1993) & (2018).]

Second, Michael's Law amended an unnumbered paragraph of

N.J.S.A. 39:4-50(a):

A court that imposes a term of imprisonment <u>for a first or second offense</u> under this section may sentence the person so convicted to the county jail, to the workhouse of the county wherein the offense was committed, to an inpatient rehabilitation program or to an Intoxicated Driver Resource Center or other facility . . . .

[N.J.S.A. 39:4-50(a) (1993) & (2018).]

Finally, Michael's Law amended N.J.S.A. 39:4-51:

A person who has been convicted of **[**violating**]** <u>a first or second violation of</u> section 39:4-50 of this Title, and in pursuance thereof has been imprisoned in a county jail or workhouse in the county in which the offense was committed, shall not, after commitment, be released therefrom until the term of imprisonment imposed has been served. A person imprisoned in the county jail or workhouse may in the discretion of the court, be released on a work release program.

No warden or other officer having custody of the county jail or workhouse shall release therefrom a person so committed, unless the person has been released by the court on a work release program, until the sentence has been served. A person sentenced to an inpatient rehabilitation program may upon

6                                                          A-0452-16T4

> petition by the treating agency be released, by the court, to an outpatient rehabilitation program for the duration of the original sentence.
>
> [N.J.S.A. 39:4-51 (1977) & (2018).]

Defendant argues that, unlike persons convicted of "a first or second" DWI violation, persons convicted of third or subsequent DWI violations need not be confined "until the term of imprisonment imposed has been served." Ibid. That literal reading has no basis in the legislative history, and produces absurd results.

The bill that became Michael's Law was introduced into the Assembly. A. 3342 (Feb. 13, 2003) [Original Assembly Bill].[3] The Assembly Law and Public Safety Committee adopted a committee substitute. Assemb. Comm. Substit. for A. 3342 (Mar. 10, 2003) [Assembly Committee Substitute]. The Senate Law and Public Safety and Veterans' Affairs Committee amended the Assembly Committee Substitute. Assemb. Comm. Substit. for A. 3342 (first reprint Nov. 24, 2003) [Senate Committee Amended Bill].[4] The amended

---

[3] The bill introduced in the Senate contained the identical proposed language and sponsors' statement. S. 2378 (Mar. 10, 2003); Sponsors' Statement appended to S. 2378 (Mar. 10, 2003).

[4] The Senate committee also adopted an identical Senate committee substitute and statement. Senate Comm. Substit. for S. 2378 (Nov. 24, 2003); Senate L. & Pub. Safety & Veterans' Affairs Comm. Statement to Senate Comm. Substit. for S. 2378 (Nov. 24, 2003).

version was unanimously passed by the Senate, unanimously passed by the Assembly on January 12, 2004, and was signed by the Governor. Governor's Official Press Release (Jan. 20, 2004) [Governor's Statement].[5]

The bill was known as Michael's Law "in memory of Michael Albano, a 19-year old from Vineland who was killed by a drunk driver in December 2001. The offender had four previous drunk driving convictions." Sponsors' Statement appended to A. 3342 53 (Feb. 13, 2003) [Sponsors' Statement]. The statutory language and legislative history show Michael's Law "enhances penalties for third and subsequent [DWI] offenses." Governor's Statement at 1. As Governor McGreevey explained: "'Statistics show multiple DWI offenders are one of the most difficult groups to stop from drunk driving . . . . Michael's Law will keep third-time DWI offenders off the streets, even if they won't keep themselves off the streets. It will guarantee they spend time in jail.'" Ibid.

First, Michael's Law sought to make third or subsequent DWI offenders spend 180 days in jail, with the only exception being up to ninety days in an inpatient drug or alcohol treatment program. The Original Assembly Bill provided that such a "person

_____

[5]

https://repo.njstatelib.org/bitstream/handle/10929.1/20964/govmess/ch315gov.htm.

shall be sentenced to imprisonment for a term of not less than 180 days, except that the court may lower such term for each day, not exceeding 90 days, of participation in a rehabilitation program for drug and alcohol dependent persons." Id. at 2.[6] The bill's sponsors sought to "motivate these offenders to seek treatment for the underlying alcohol or drug problem that causes them to reoffend." Sponsors' Statement at 53.

The Assembly Committee Substitute proposed to amend N.J.S.A. 39:4-50(a)(3) to require that third or subsequent DWI offenders serve both "90 days imprisonment in a county jail or workhouse" and "a 90-day drug or alcohol inpatient rehabilitation program." Id. at 3. The committee statement explained this would require "a mandatory 90-day term of imprisonment in a county jail or workhouse." Assemb. L. & Pub. Safety Comm. Statement to Assemb. Comm. Substit. for A. 3342 1 (Mar. 10, 2003) [Assembly Committee Statement].

---

[6] The Original Assembly Bill proposed to place this language in a new section in the Criminal Code making a third or subsequent DWI offense "a crime of the fourth degree," and to amend N.J.S.A. 39:4-50(a)(3) by deleting its language addressing jail and community service and adding that a defendant who committed a third or subsequent DWI offense "shall be subject to the penalties set forth in" the proposed criminal section. Original Assembly Bill at 2, 36. Those proposals were not adopted in subsequent versions of the bill.

A-0452-16T4

The Senate Committee Amended Bill replaced the Assembly Committee's requirement of ninety days in jail and ninety days in inpatient rehabilitation with the ultimately-adopted requirement of "not less than 180 days in a county jail or workhouse" which the court could reduce "for each day, not exceeding 90 days," in an inpatient rehabilitation program. Id. at 3. The Senate committee statement explained that, except for such inpatient rehabilitation, it was otherwise requiring "a mandatory 180-day sentence in a county jail or workhouse." Senate L. & Pub. Safety & Veterans' Affairs Comm. Statement to Assemb. Comm. Substit. for A. 3342 1 (Nov. 24, 2003) [Senate Committee Statement].

Second, Michael's Law sought to prevent third or subsequent DWI offenders from serving any of their jail sentence in community service. The bill deleted the language in N.J.S.A. 39:4-50(a)(3) permitting up to ninety days of the jail term to be served by performing community service. Original Assembly Bill at 2, 36; Assembly Committee Substitute at 3; Senate Committee Amended Bill at 3. The committee statements differentiated Michael's Law from the "current law" under which a court could reduce the 180-day jail term "by up to 90 days for each day served performing community service." Assembly Committee Statement at 1; Senate Committee Statement at 1.

A-0452-16T4

Third, Michael's Law sought to remove the option of serving all of the 180-day term in an inpatient drug or alcohol rehabilitation program. Unlike the unnumbered paragraph of N.J.S.A. 39:4-50(a) (1993), which permitted all DWI offenders to be sentenced "to the county jail, to the workhouse of the county wherein the offense was committed, [or] to an inpatient rehabilitation program," ibid., Michael's Law required third or subsequent DWI offenders to serve the first ninety days "in a county jail or workhouse." Assembly Committee Substitute at 3; Senate Committee Amended Bill at 3. The committee statements noted that "[u]nder current law," third or subsequent DWI offenders "may not be required to serve their term of imprisonment in the county jail or workhouse, but may serve such imprisonment in an inpatient rehabilitation program. Under the substitute, at least 90 days would have to be served in jail without exception." Assembly Committee Statement at 1; Senate Committee Statement at 1.

Fourth, Michael's Law sought to prevent work release for a third or subsequent DWI violation by inserting the language "a first or second violation" into N.J.S.A. 39:4-51. Assembly Committee Substitute at 3; Senate Committee Amended Bill at 3. The committee statements explained: "The substitute also makes drunk drivers who are required to serve the [180-day] mandatory

term of imprisonment ineligible to participate in a work release program. Under a work release program, qualified prisoners may be employed outside the jail, but when not working, they must be confined to the jail." Senate Committee Statement at 1; see Assembly Committee Statement at 1.

Thus, the legislative history shows Michael's Law sought to strengthen the penalties for third or subsequent DWI offenders, like the driver who killed Michael Albano, by requiring them to serve 180 days in the county jail or workhouse, with up to ninety days in an inpatient drug or alcohol rehabilitation program, and by precluding all other sentencing alternatives. These penalty enhancements served to keep third-time DWI offenders confined for 180 days and thus "'off the streets, even if they won't keep themselves off the streets.'" Governor's Statement at 1.

Nowhere in the legislative history is there any indication the Legislature intended Michael's Law to weaken the penalties for third or subsequent DWI offenders by allowing them to be periodically released before they have served the 180 days. Such a result would be contrary to the Legislature's intent to end all other sentencing alternatives, and would defeat the purpose of keeping such defendants confined for the 180 days.

Moreover, defendant's argument is contrary to our definitive interpretation of Michael's Law in State v. Luthe, 383 N.J. Super.

512 (App. Div. 2006). The principal issue raised in Luthe's appellate brief was:

> THE TRIAL COURT ERRED BY DENYING THE DEFENDANT THE EQUAL OPPORTUNITY FOR ALTERNATE SENTENCING PROGRAMS PURSUANT TO THE PRACTICES ENGAGED IN THROUGHOUT THE STATE OF NEW JERSEY THEREBY VIOLATING THE DEFENDANT'S EQUAL PROTECTION RIGHTS.

Luthe "claim[ed] other counties afford third-offenders alternative sentencing options." Luthe, 383 N.J. Super. at 513. Luthe's brief argued, and she supplied a certification showing, that "fourteen out of twenty-one counties in New Jersey offer alternate sentencing programs such as the Work Release Program, SLAP, CLAP, Home Arrest, the Bracelet Program and Day/Weekend Reporting."[7]

Day service and weekend service are prominent examples of periodic service. See State v. J.C.S., 156 N.J. Super. 66, 71 (App. Div. 1978) (rejecting an order allowing a criminal sentence to "be served on weekends" because there was "no statutory authority for imposition of a periodic sentence"); see State v. Kotsev, 396 N.J. Super. 58, 63 (Law Div. 2005) (treating weekend service as a "periodic sentence" under N.J.S.A. 2B:12-22), aff'd o.b., 396 N.J. Super. 389 (App. Div. 2007). Defendant's Municipal

---

[7] "SLAP" refers to a sheriff's "labor assistance program." N.J.S.A. 2B:19-5. CLAP refers to a Department of Corrections' labor assistance program.

Court sentence was essentially weekend service, shifted to slow days on a restaurant's schedule.

In Luthe, we rejected defendant's claim that she had a right to seek such periodic service. First, we generally held that Michael's Law prohibits work release and all other "alternative sentencing options" for third or subsequent DWI offenders. Id. at 513-16. We emphasized that Michael's Law amended N.J.S.A. 39:4-50(a)(3) to require such defendants to serve the 180 days "in a county jail or workhouse" or in an "inpatient rehabilitation program." Id. at 514 (quoting N.J.S.A. 39:4-50(a)(3)); see id. at 514 & n.2 (noting that such "inpatient confinement" "shares some of the same characteristics" as jail). We ruled N.J.S.A. 39:4-50(a)(3)'s "language is clear. Confinement, either entirely in jail or partially in jail and partially in an inpatient facility, is required. There is no allowance for noncustodial alternatives." Id. at 514. We found "the result would be the same" if we considered the legislative history. Id. at 514 (citing Assembly Committee Statement and quoting Senate Committee Statement and Governor's Statement).

Second, in Luthe we viewed the amendment to N.J.S.A. 39:4-51 as intended to prohibit work release for third or subsequent DWI offenders. Luthe argued N.J.S.A. 39:4-51 authorized work release. Id. at 515. We rejected that claim, because under Michael's law

that "statute applies solely to '[a] person who has been convicted of a first or second violation of Section 39:4-50[.]'" Ibid. (quoting N.J.S.A. 39:4-51). We added that "N.J.S.A. 39:4-50(a)(3) does not allow work release as an alternate form of sentencing." Ibid. "Simply put, N.J.S.A. 39:4-50(a)(3) does not authorize noncustodial alternatives to the mandatory 180 days confinement, whether that confinement be served entirely in jail or partially in an inpatient facility. There is no statutory authority for work release programs, out-patient treatment, or the like as an alternative." Ibid.

Third, in Luthe we specifically rejected Luthe's claim she had a right to be considered for periodic service. We noted Luthe's certification that, despite Michael's Law, "fourteen of the twenty-one counties provide such alternatives as work release, home arrest, day reporting and weekend reporting." Id. at 516. Although we stated the survey was not competent evidence, "[n]onetheless" we ruled that "if disparity exists as to the use of these alternative programs, it must cease, consistent with our construction of the statute." Ibid.

We reaffirmed Luthe in State v. Kotsev, 396 N.J. Super. 389 (App. Div. 2007). We made clear "Luthe is binding." Id. at 391. We also agreed with the Law Division's ruling in Kotsev that the Michael's Law "amendments limit work release programs to first and

second D.W.I. offenders." Kotsev, 396 N.J. Super. at 63-64, aff'd o.b., 396 N.J. Super. at 391. We have since reaffirmed Luthe in State v. Toussaint, 440 N.J. Super. 526 (App. Div. 2015), agreeing that "the legislative history [of Michael's Law] explicitly indicated the Legislature's intent to prohibit work release" for third or subsequent offenders. Id. at 533-34 (citing Luthe, 383 N.J. Super. at 514). Our Supreme Court has also reaffirmed Luthe's broad holding: "Thus, unlike the pre-2004 statute, [Michael's Law] requires a third or subsequent DWI offender to be confined 'either entirely in jail or partially in jail and partially in an inpatient facility' with 'no allowance for noncustodial alternatives.'" State v. Denelsbeck, 225 N.J. 103, 116 (2016) (quoting Luthe, 383 N.J. Super. at 514).

Moreover, we agreed with the Law Division in Kotsev, which applied the law in 1993 when Kotsev's third DWI offense occurred and rejected his request to serve "his sentence on weekends" because "such a sentence would not be aligned with the intent of the Legislature or the enhanced penalties contained in the current statute." Kotsev, 396 N.J. Super. at 60-61, 64, aff'd o.b., 396 N.J. Super. at 391. We similarly rejected Kotsev's claim he should be allowed to serve his jail sentence on weekends: "The 1993 DWI statute was no less clear than the 2004 amendment. . . . SLAP is not an option. Weekend service is not an option." Kotsev, 396

N.J. Super. at 390-92. Though Kotsev's decision under 1993 law is not dispositive in our interpretation of Michael's Law, it highlights that defendant is claiming that Michael's Law granted third or subsequent DWI offenders a lenient sentencing option, denied all DWI defendants under the preexisting law, and still denied to first and second DWI offenders.

Defendant relies on a Law Division case, State v. Grabowski, 388 N.J. Super. 431 (Law Div. 2006). The judge in Grabowski held that "a defendant, having been convicted of a third or subsequent violation of N.J.S.A. 39:4-50, may be sentenced to periodic imprisonment pursuant to N.J.S.A. 2B:12-22 notwithstanding the provisions of Michael's Law . . . and the ruling in State v. Luthe." Grabowski, 388 N.J. Super. at 432.

However, we have rejected Grabowski. In Kotsev, we ruled the "[d]efendant's reliance on State v. Grabowski . . . is substantially misplaced. First, the Law Division decision is not binding on any court. Second, the Law Division decision . . . is contrary to State v. Luthe." Kotsev, 396 N.J. Super. at 391. In any event, the Law Division's decision in Grabowski is not persuasive for several reasons.

First, the judge in Grabowski concluded Luthe "has not ruled that periodic incarceration is unavailable to persons convicted of third and subsequent DWI offenses." 388 N.J. Super. at 438.

17

The judge asserted that Luthe's "reference to 'home arrest, day reporting and weekend reporting' is dicta" and that "the precise issue in Luthe "was limited to the availability of non-custodial alternatives." Id. at 438-40.

To the contrary, in Luthe we ruled that Michael's Law barred all "alternative sentencing options," and removed any "statutory authority for work release programs, out-patient treatment, or the like as an alternative." Luthe, 383 N.J. Super. at 513-15 (emphasis added). In particular, we rejected Luthe's claim she had a right to be considered for "such alternatives as . . . day reporting and weekend reporting," ordering that "the use of these alternative programs . . . must cease." Id. at 516.

Although not the focus of our opinion, our rejection of Luthe's claim for periodic service was not dicta. "'[M]atters in the opinion of a higher court which are not decisive of the primary issue presented but which are germane to that issue . . . are not dicta, but binding decisions of the court.'" State v. Rose, 206 N.J. 141, 183 (2011) (citation omitted). In any event, "'an expression of opinion on a point involved in a case, argued by counsel and deliberately mentioned by the court, although not essential to the disposition of the case . . . becomes

authoritative[] when it is expressly declared by the court as a guide for future conduct.'" Ibid. (citation omitted).[8]

Second, the judge in Grabowski relied on the supposed silence of a non-binding memorandum. In Luthe, we suggested the Administrative Office of the Courts (AOC) consider issuing directives "to ensure uniform compliance with the statute." 383 N.J. Super. at 516. In Grabowski, the judge asserted the subsequent AOC memorandum barring SLPA and work release said nothing about periodic imprisonment. 388 N.J. Super. at 439-40.

However, the AOC memorandum implied the 180-day confinement was to be served immediately and continuously. It instructed that "the jail term of a third or subsequent DWI offender should begin on the same day on which he or she is sentenced"; "such a defendant should go directly from the municipal court to the jail, minimizing his or her opportunity to drive"; courts should ensure "the

_____

[8] Recently, in holding intermittent service permissible for a different crime under different statutes, N.J.S.A. 2C:40-26 and N.J.S.A. 2C:43-2, we commented in a footnote that "[t]he references to weekend sentences in Kotsev and Luthe are dicta." State v. Rodriquez, __ N.J. Super. __, __ n.12 (App. Div. Apr. 12, 2018). However, it was not dicta when we rejected the appellants' demands for weekend service in Kotsev under 1993 law, and in Luthe under Michael's Law. Thus, we respectfully disagree with the comment in Rodriquez. We express no opinion about the validity of the actual holding in Rodriquez, because we, like Luthe and Kotsev, address "a different violation of a different statute with a different legislative history," and a different statute concerning periodic service. __ N.J. Super. at __ n.12.

defendant first serves the entire 180 days of imprisonment minus the projected length of the inpatient rehabilitation program"; and after serving the jail portion, the defendant "should immediately begin to serve the balance of the term . . . in the inpatient rehabilitation program." AOC, "Sentencing of Third or Subsequent DWI Offenders — State v. Luthe and 'Michael's Law'" at 1-2 (Oct. 25, 2006) (quoting Governor's Statement at 1). The AOC memorandum suggested such continuous service of the 180 days "[i]n order to effectuate" "[t]he Legislature's stated purpose in enacting 'Michael's Law' [which] was to 'keep third-time DWI offenders off the streets, even if they won't keep themselves off the streets.'" Id. at 1 (quoting Luthe, 383 N.J. Super. at 514 (quoting Governor's Statement at 1)).

Even if the AOC memorandum had not implied continuous service, an AOC directive "has no substantive effect in the interpretation of the statute or prior case law." Booker v. N.J. State Parole Bd., 265 N.J. Super. 191, 199 n.4 (App. Div. 1993), aff'd, 136 N.J. 257 (1994). Indeed, the Law Division in Grabowski invoked that case to explain why it was not bound by a county directive based on the consensus of the Conference of Presiding Judges of the Municipal Courts. 388 N.J. Super. at 433-34.

Third, the judge in Grabowksi faulted Luthe for not citing N.J.S.A. 2B:12-22. 388 N.J. Super. at 440. However, N.J.S.A.

20

2B:12-22 is part of the general statutes governing the Municipal Court, and makes no specific reference to DWI offenders. By contrast, N.J.S.A. 39:4-51 and Michael's Law specifically addressed how DWI offenders must serve their jail term. Thus, as to those defendants, the more specific DWI provisions governs over the general N.J.S.A. 2B:12-22, and <u>Luthe</u> properly relied on them. "It is a well established precept of statutory construction that when two statutes conflict, the more specific controls over the more general." <u>N.J. Transit Corp. v. Borough of Somerville</u>, 139 N.J. 582, 591 (1995).

Fourth, the judge in <u>Grabowski</u> asserted that "<u>Luthe</u> did not analyze the distinction between work release, SLAP and other non-custodial alternatives and periodic sentences," and "that periodic incarceration authorized by N.J.S.A. 2B:12-22 is materially different from the non-custodial alternatives considered in <u>Luthe</u>." <u>Grabowski</u>, 388 N.J. Super. at 438, 440. However, the judge made too much of this distinction. Periodic service and work release strongly resemble each other. Both allow defendants to be in jail for limited periods and to be released from custody to work, including at the jobs they had prior to conviction. <u>See</u> N.J.S.A. 30:8-46. Thus, they both involve custodial jail time and non-custodial work time. Indeed, defendant's request to be in

jail only two days a week so he could work in his restaurant five days a week was effectively a request for work release.

The judge in Grabowski asserted that a person on work release was subject to more restrictions because "when such a person is not so employed, and between the hours or periods of employment, he or she should be confined in jail, N.J.S.A. 30:8-48," and because the person can be prosecuted for escape under N.J.S.A. 2C:29-5(a). Grabowski, 388 N.J. Super. at 438. However, N.J.S.A. 2C:29-5(a) covers any person who "fails to return to official detention following temporary leave granted for a specific purpose or limited period," and thus appears broad enough to cover defendants released during periodic service who fail to return after the "limited period" of release. Ibid. Moreover, periodic service can be limited to "particular days." N.J.S.A. 2B:12-22.

The judge in Grabowski stated: "Most importantly, inmates admitted to county work release programs may be granted a diminution of their sentence of up to one-quarter of their term for good conduct." 388 N.J. Super. at 438-39 (citing N.J.S.A. 30:8-50). "While SLAP and work release inmates are earning jail time credit while not actually confined within the four walls of the penal institution, those persons under a sentence of periodic imprisonment receive jail credit only for each day or fraction of a day to the nearest hour actually served." Id. at 439. "The

22                                                                    A-0452-16T4

effect is that those persons under such a sentence will serve no less time in the aggregate than those who serve their sentences consecutively. This, of course, is not the case with persons admitted into work release or SLAP programs." Ibid.

That distinction is unpersuasive. First, it is discretionary whether work release results in any reduction in jail time, with no guarantee of a day-for-day reduction. N.J.S.A. 30:8-50; N.J.A.C. 10A:31-25.22(a); see N.J.A.C. 10A:31-23.1(b). Second, SLAP inmates are "rigorously supervise[d] offenders providing physical labor" for the sheriff, and thus earn whatever jail credit they receive. N.J.S.A. 2B:19-5(c)(1).

In any event, even if SLAP or work release provided day-for-day credit, and even if they more closely resemble confinement than periodic service does, that begs the question why the Legislature in Michael's Law, which eliminated both work release and SLAP to increase the punitive and deterrent effect of the 180-day term, would simultaneously decrease the severity of that term by allowing it to be served in periodic snippets at the defendant's convenience and request.

Fifth, the judge in Grabowski found the Legislature may have misdrafted its amendment of N.J.S.A. 39:4-51. The judge noted that N.J.S.A. 39:4-51 "had authorized work release as a sentencing option for persons convicted of DWI," and that "Michael's Law

23                                                    A-0452-16T4

eliminated that option for third and subsequent offenders" by amending N.J.S.A. 39:4-51 so "that the statute applies solely to '[a] person who has been convicted of a first or second violation of Section 39:4-50.'" 388 N.J. Super. at 435-36 (quoting Luthe, 383 N.J. Super. at 515). As a result, the judge ruled "that the literal and plain language of N.J.S.A. 39:4-51 compels the conclusion that the requirement for continuous confinement to jail for violators of our drunk driving statute does not extend to third and subsequent offenders." Id. at 436. "Whether this result was intentional on the part of the Legislature, or less than artful draftsmanship that resulted in legislative 'blowback' (the concept of unforeseen and unintended consequences), is unclear. However, it is not for this court to completely re-write a statute which can be afforded a reasonable interpretation when construed as written." Id. at 437.

To the contrary, the Grabowski judge's reading of N.J.S.A. 39:4-51 was not reasonable. The judge asserted that opening the door to periodic service by third or subsequent DWI offenders may have been intentional because "[o]rdinarily, a change of statutory language implies a purposeful alteration in the substance of the law." 388 N.J. Super. at 437. However, as the legislative history makes clear, the Legislature's purpose in inserting the language "a first or second violation" in N.J.S.A. 39:4-51 was to restrict

24

work release to defendants convicted of a first or second DWI violation, and thus to make defendants convicted of third or subsequent violations "ineligible to participate in a work release program." Senate Committee Statement at 1; see Assembly Committee Statement at 1.

To read the amended N.J.S.A. 39:4-51 literally would defeat that legislative objective. The language "first or second violation" appears only in the amended first sentence, which does not address work release. Read literally, that language would affect only the first sentence and would have no effect on the unchanged subsequent sentences permitting all DWI defendants to "be released on a work release program." N.J.S.A. 39:4-51. We rejected that literal reading in Luthe, instead applying the language to bar work release as the Legislature intended. 383 N.J. Super. at 515-16.

Moreover, the Grabowski judge's literal reading would cause an absurd result the Legislature never intended. Before Michael's Law, all DWI defendants, whether convicted of a first, second, third, or subsequent DWI offense, could not be released from imprisonment in a county jail or workhouse until their prison term had been served, and were ineligible for weekend service. N.J.S.A. 39:4-51 (1993); Kotsev, 396 N.J. Super. at 63-64, aff'd o.b., 396 N.J. Super. at 392. However, the judge read Michael's Law as

allowing third or subsequent DWI offenders to be released periodically before their mandatory 180-day term had been served, while requiring first or second DWI offenders to serve their entire term continuously.

The judge in Grabowski, and defendant here, could not posit any reason why the Legislature would weaken the severity of the 180-day term for third or subsequent DWI offenders, or treat them more leniently than first or second DWI offenders who must continuously serve their sentences, which can be as long as ninety days in jail. N.J.S.A. 39:4-50(a)(2). The judge's reading of Michael's Law contradicts its entire purpose: to gain "greater deterrence" and impose "increased penalties" on defendants convicted of third and subsequent DWI offenses by removing every method of ameliorating the 180-day term. Kotsev, 396 N.J. Super. at 63-64, aff'd, o.b., 396 N.J. Super. at 391; see State v. Chun, 194 N.J. 54, 74 (2008) (noting that Michael's Law had imposed "increasingly harsh" penalties for third and subsequent offenders by imposing mandatory time in jail or inpatient rehabilitation); State v. Chambers, 377 N.J. Super. 365, 375 (App. Div. 2005) (ruling that Michael's Law "strengthened the mandatory prison term for third or subsequent convictions" as part of "the overall thrust of the 2004 amendments" to "increase the penalties for violators").

Crucially, the Law Division ignored the long-standing principle that "[i]t is axiomatic that a statute will not be construed to lead to absurd results. All rules of construction are subordinate to that obvious proposition." State v. Provenzano, 34 N.J. 318, 322 (1961); see Harper, 229 N.J. at 237; Nance, 228 N.J. at 396.

> "The goal of all statutory interpretation 'is to give effect to the intent of the Legislature.'" In doing so, "we must construe the statute sensibly and consistent with the objectives that the Legislature sought to achieve." We will not adopt an interpretation of the statutory language that leads to an absurd result or one that is distinctly at odds with the public-policy objectives of a statutory scheme.
>
> [State v. Morrison, 227 N.J. 295, 308 (2016) (citations omitted).]

For example, in Harper, we rejected a claim that a gun amnesty statute's "plain language" precluded prosecution because "such a reading of the law would lead to absurd results that are at odds with the overall legislative scheme." 229 N.J. at 238. We did so even though "the legislative history of the amnesty provision is sparse," because "[o]n the same day the amnesty provision was enacted, the Governor also signed . . . related laws" strengthening the gun laws. Id. at 239.

Here, as noted in the Governor's Statement, on the same day as the Governor signed Michael's Law he also signed two other

27

acts, which the Legislature passed the same day as Michael's Law, designed to strengthen the DWI laws and increase traffic safety. Id. at 2. "Florence's Law," L. 2003, c. 314, amended N.J.S.A. 39:4-50 to make it an offense to drive with a blood alcohol level of 0.08% to 0.10%, while the other law, L. 2003, c. 310, "ban[ned] the use of hand-held wireless phones in moving vehicles." Governor's Statement at 2. Moreover, the ample legislative history of Michael's Law demonstrates that the Grabowski judge's reading was contrary to the intent of the Legislature to enhance the penalties for third or subsequent offenders and to prevent them from getting work release by inserting a restriction to "a first or second violation" in N.J.S.A. 39:4-51.

We agree that the Legislature employed less than artful draftsmanship in the placement of that phrase in the first rather than the second sentence of N.J.S.A. 39:4-51. We also agree "[c]ourts cannot 'rewrite a plainly-written enactment of the Legislature.'" State v. Frye, 217 N.J. 566, 575 (2014) (citation omitted). Nevertheless, where a court "determines that 'a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control.'" Ibid. (citation omitted); see State v. Drake, 444 N.J. Super. 265, 276-78 (App. Div. 2016) (applying that precept even though the Legislature's draftsmanship was "'subject to criticism'").

Finally, the judge in <u>Grabowski</u> said that under the rule of lenity, "[p]enal statutes that are open to more than one reasonable construction must be construed strictly against the State." 388 N.J. Super. at 436. However, "'the rule of strict construction does not mean that the "manifestations of the Legislature's intention should be disregarded."'" <u>State v. Carreker</u>, 172 N.J. 100, 115 (2002) (citations omitted). "Instead, the rule of lenity is applied only if . . . [the] ambiguity is not resolved by a review of 'all sources of legislative intent.'" <u>State v. Regis</u>, 208 N.J. 439, 452 (2011) (citation omitted). The legislative history of Michael's Law shows the legislative intent was to preclude work release, not allow periodic service.

Moreover, "'[e]ven a penal statute should not be construed to reach a ridiculous or absurd result.'" <u>State v. Jones</u>, 347 N.J. Super. 150, 153 (App. Div. 2002) (quoting <u>State v. Wrotny</u>, 221 N.J. Super. 226, 229 (App. Div. 1987) (citing <u>State v. Gill</u>, 47 N.J. 441, 444 (1966))). The rule of lenity "only applies when other canons of statutory interpretation fail to yield a clear result." <u>State v. Twiggs</u>, 445 N.J. Super. 23, 36 (App. Div. 2016), <u>aff'd</u>, ___ N.J. ___ (2018). Here, the canon against absurd interpretations yields a clear result, precluding application of the rule of lenity. <u>See, e.g.</u>, <u>Harper</u>, 229 N.J. at 231, 244; <u>State v. Fleischman</u>, 189 N.J. 539, 550, 553 n.4 (2007).

29

Accordingly, we disapprove the Law Division's decision in Grabowski. Defendant's remaining arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION